## ISAAC ALLEN, Respondent, *v.* The WILLIAMSBURGH SAVINGS BANK, Appellant.

Where a savings bank is bound by its rules to exercise its best care to prevent fraud, it is not protected by a clause in such rules that a payment to one producing a deposit book shall be deemed good and valid, in case of a payment made by it, merely upon the production of a depositor's book, to one who has wrongfully obtained possession of and produces it under circumstances such as would necessarily excite suspicion and inquiry ; as where the person who presents the book is of a different sex from the depositor.

In the absence of any rules assented to by its customers a savings bank is to be governed by the same legal principles which apply to other moneyed institutions. Where it has prescribed rules to which a depositor has assented, they are the agreement between them, and each must conform to them to preserve rights against the other.

The by-laws of defendant, a savings bank, which were printed in its customer's deposit book, contained the following : " The bank will use its *best* efforts to prevent fraud ; but all payments made to persons producing the deposit books shall be deemed good and valid payments." It was also provided that drafts might be made personally, or by order in writing of the depositor if the bank have his signature on the signature book. Plaintiff was a depositor, and defendant had his signature in such book. The wife of plaintiff wrongfully obtained possession of his deposit book, which she presented with a forged check or order, for $2,850,· and this sum was paid to her. In an action to recover the amount, the order and the signature book were produced on the trial. Defendant's own officers, as witnesses, stated that there was a difference between the signature to the order, and that in the signature book. The court declined to charge that the payment was valid, but left it to the jury to determine whether defendant used its best efforts to prevent fraud. *Held*, that as this court had not the benefit which the trial court had of the inspection of the signatures. it could not say but that said court on inspection, discovered such a difference, as with the other circumstances of the case authorized an inference of negligence and made a submission of the question to the jury proper.

Also *held*, that a request to charge, that if the defendant exercised ordinary care and diligence, and paid in good faith, it was excused, was properly refused, as defendant had obligated itself to exercise more than ordinary care, *i. e.*, its " best efforts."

(*Schoenwald* v. *Met. Savings Bank*, 57 N. Y., 418,) distinguished and limited ; (*Hayden* v. *Brooklyn Savings Bank*, 15 Abb. [N. S.], 297 ; and *Appleby* v. *Erie Co. Savings Bank*, 62 N. Y., 12), distinguished.

(Argued April 4, 1877 ; decided April 17, 1877.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, affirming a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial. ·

This was an action to recover the balance alleged to be due upon the deposit account of plaintiff with defendant, a savings bank.

The only question was as to an alleged payment by defendant of an item of $2,850. At the time plaintiff opened his account, he signed his name in a signature book. The by-laws of the bank, a printed copy of which was in plaintiff's deposit or pass book, contained the following :

" Drafts may be made personally, or by the order in writing of the depositor (if the bank have the signature of the party on their signature book, or by letters of attorney duly authenticated); but no person shall have the right to demand any part of his or her principal or interest, without producing his or her bank book, that such payments may be entered therein."

" The· bank will use its best efforts to prevent fraud; but all payments made to persons producing the deposit books, shall be deemed good and valid payments to depositors respectively."

Plaintiff's wife wrongfully and without his knowledge obtained possession of his pass book and applied to the bank for $2,850. One of the officers filled up a check or order and gave it to her to procure the signature of plaintiff. · She presented the book and the order, with a forged signature of plaintiff thereto, and the money was paid to her. The signature book and the order were produced on the trial. The witnesses for defendant testified that there was a general resemblance between the two signatures. Three of defendant's officers who were called as witnesses testified, however, that there was a difference between them.

Defendant's counsel requested the court to charge the jury that the payment of the $2,850 was a valid payment to the plaintiff.

The court refused so to charge, and the defendant's counsel duly excepted.

The court charged the jury, that the only question for them to determine was, whether the defendant used its best efforts to secure the payment of this sum of $2,850 to the proper person; that if it did, it should be credited with that amount. If, on the contrary, the defendant did not use its best efforts to secure that payment to the proper person, they should find a verdict for the plaintiff for the whole amount of his claim; to which said counsel duly excepted.

The defendant's counsel then requested the court to charge that if the defendant exercised ordinary care and diligence to ascertain whether the order for $2,850 was signed by the. plaintiff, and paid the same in good faith to the person presenting the order and bank book, such payment should be credited to the defendant.

The court refused so to charge, and the defendant's counsel duly excepted.

*Amasa J. Parker*, for the appellant. Plaintiff having agreed " to be governed by the by-laws and regulations " of defendant, such rules and regulations constitute the contract between the parties. (*Appleby* v. *Erie Co. Savings Bank*, 62 N. Y., 12, 17; *Warhus* v. *Bowery Savings Bank*, 21 id., 543; *Schoenwold* v. *Met. Savings Bank*, 57 id., 418, 423; *Hayden* v. *Brooklyn Savings Bank*, 15 Abb. [N. S.], 297.) The court erred in submitting to the jury the question whether defendant exercised proper diligence or used its best efforts to prevent fraud. (*Schoenwold* v. *Met. Savings Bank*, 57 N. Y., 418; *Appleby* v. *Erie Co. Savings Bank*, 62 id., 18; *Hayden* v. *Brooklyn Savings Bank*, 15 Abb. [N. S.], 297, 299.) The burden of proving negligence was on plaintiff. (62 N. Y., 15.)

*D. P. Barnard*, for the respondent. The payment to plaintiff's wife was not valid. (*Appleby* v. *Erie Co. Savings Bank*, 62 N. Y., 12.)

FOLGER, J.   It may be taken as undisputed, that the name of the plaintiff to the order on the defendant is not his genuine signature.   If the payment had been made in reliance upon that instrument, and in the absence of agreement as to the mode of making payment, the defendant could not be excused.   It would have been bound to know that the signature of its customer was forged; (*The Nat. Park Bank* v. *Ninth Nat. Bank*, 46 N. Y., 77.)   If the payment had been made in reliance upon the fact alone, that it was to a person producing the deposit book, the defendant could not be excused; it must appear in addition that there was the exercise of at least ordinary care and diligence.   So it was held in *Appleby* v. *Erie Co. Savings Bank* (62 N. Y., 12.)

It has made rules as to payments, by which it and its customers are to be governed, they being in the nature of an agreement; (ib.)   It is not to be excused, until it has shown that it used its best efforts, called for under the circumstances of the case, to prevent fraud.   It agreed to do that by those rules.   It is true that the plaintiff has agreed to the rules also, and that a part of them is, that all payments made to persons producing the deposit books shall be deemed good and valid payments to depositors respectively.   He is to be held to have agreed to it, however, in view of the counter-agreement of the defendant, that it would use its best efforts to prevent fraud.   It may hold the depositor to one part of the rule, but it must be held to the other.   There is also to be kept in sight the other rule which is connected therewith, prescribing the three ways in which drafts may be made. By the word "drafts" is not meant the instruments in writing commonly known as such, viz.: bills of exchange or orders for money; but the acts or fact of drawing money by the depositor from the funds of the bank.   Those three ways were: first, personally; second, by the order in writing of the depositor, if the bank have his signature on its signature book; third, by letter of attorney, duly authenticated.   Now it has made payment; but it was not to the plaintiff personally; it was not on the order in writing of the plaintiff, whose

signature it had upon its signature book; it was not by letter of attorney duly authenicated. So that it is confined for a justification of the payment, to the operation of the rule that all payments made to persons producing the deposit books shall be deemed good and valid payments to depositors respectively. And relying upon that, it must show also that it used its best efforts to prevent fraud.

The defendant insists that it has shown this, and that it should have been ruled as matter of law by the trial court that it had done so; and that the trial court was in error in submitting any question to the jury.

It relies upon *Schoenwald* v. *Metropolitan Savings Bank* (57 N. Y., 418), as a conclusive authority upon that point. If it be conceded that it was so held in that case, we think that the case in hand is distinguishable therefrom. In that case special attention is not given to the clause in the rules, that the secretary will use his best efforts to prevent fraud. It is quite likely, that there was in the judgment of the learned court no need to notice it. It seems from the report, that the signature to the order presented, was very much like the genuine signature of the depositor there ; that the plaintiff herself testified, that she did not know if it was or not, and that it looked like her handwriting ; and could deny that it was her signature, only argumentatively, because she never gave any one a paper like that. The testimony in that case will bear out the remark of the learned commissioner who delivered the opinion : " I do not discover that there was anything in the nature of the transaction to indicate that the order was a forgery, as, upon somewhat questionable evidence, the jury has found." But I am compelled to say, that there are some expressions in the opinion in that case, with which I cannot agree. For instance, that " the bank had the right to make the payment it did, on the simple production of the pass book." Now the depositor there was a female. The person who produced the book was a male. Here was a fact, which at once notified the bank officers that it was not the depositor who applied for payment. It can-

not be, that in such case, the bank officers should not be excited to suspicion, and called to the exercise of inquiry and care. Although there was an order for money, in that case, the opinion denies, " that it was at all material to the defendant whether it was a forgery or not." The person producing the book was plainly not the depositor named in it. This was a fact calling for care. How was care to be shown? The book was not a negotiable instrument. Though such an evidence of a right may be assignable by delivery, the delivery must be accompanied with the intent to assign. That intent is not established by the possession of the book merely. An officer, in the exercise of ordinary care, would or should in such a case, ask for further evidence of right to demand payment. The natural and easy evidence to be given, would be the order of the depositor upon the bank, for the payment of money to the holder of the book. So, when an order is required, or is produced with the book without previous requirement, it is a material thing, whether it be forged or not, and the paying agent of the bank is called upon to scrutinize, and compare and verify it. If detected as a forged order, it is not " at least equal to no order at all," for it is, as a forged order, a conclusive proof of an attempted fraud, which the bank has promised the best efforts to prevent.

I do not say that the result reached by the learned commissioner was not a correct one upon the facts of that case, which appear much stronger to sustain him, in the appeal book, than in the report in 57 N. Y. But with the reasoning as above noticed I cannot agree. The officers of savings banks, acting under rules such as those shown to us in this case, are bound to the exercise of care and diligence, up to the mark which is fixed for the bank by those rules. When a person of one sex produces the deposit book issued to one of another sex, it should arrest the attention and excite inquiry. It will be entirely incompatible with a pretence of good faith, or of the use of best efforts to prevent fraud, to assert that a payment in such case was believed to be to the depositor personally, and to take shelter behind the

clause in the rules, that a payment to the person producing the book shall be deemed good and valid. Payment to a woman producing the book of a man, without an assignment, without proof of delivery, without an order, or letter of administration or testamentary, and merely upon the production of the book, is negligence too gross to be justified or excused. The defendant perceived this, and required an order for the money. It did not rely upon the possession of the book. The inquiry then is, was there anything in the appearance of the order which should have excited the suspicion of the officers of the defendant and incited to further effort to prevent a fraud ? Or rather, on this branch of the case, the question is narrower than that, and is: was there in the signature such want of likeness to the signature of the plaintiff in the signature book as made it a question proper to be submitted to the jury ? It seems that the three witnesses for the defendant, all agents of it, all more or less concerned in making payments, all stated in their testimony that there was a difference in the signatures, when presented to them in court. Besides that, the court had opportunity of inspecting the two signatures, and forming an opinion whether there was so much or so little room for doubt of genuineness, as to make a question of law for the court or of fact for the jury, on the issue of the exercise of care by the defendant. Here we reach the principle of *Appleby* v. *Erie Co. Savings Bank* (62 N. Y., 12), upon which the defendant mistakenly relies. There the court had refused to submit the question of the negligence of the defendant to the jury; and the plaintiff was the appellant on his exception thereto. This court held, that it was on the appellant, to establish that error was done on the trial, and that he failed therein, inasmuch as it did not appear that the difference in the signature was so manifest to the trial court on inspection, as to require that question to be submitted. The decision was put very much upon the ground, that this court did not have the benefit which the trial court had, of an inspection of the signatures, and with-

out that could not say but that the trial court on such inspection, failed to discover such difference therein as would sustain an imputation of negligence. In that case too, the person presenting the book was a male, as was the depositor; and made himself the signature, in presence of the paying agent, at the time of payment. He falsely personated the depositor, to the deception of the bank officers. Here the case is different in all respects. The trial court having inspected the signatures, has held that the difference in them was such, as that, in connection with the other circumstances of the case, it was proper to submit to the jury the question of negligence.

The case cited from 15 Abb. (N. S.), 297, *Hayden v. Brooklyn Savings Bank*, is not applicable. It was tried by a referee, who found, as a matter of fact, that the bank was not negligent, and his judgment, based upon that finding, in favor of the bank, was affirmed.

It being proper to submit the question to the jury, it was not error to charge them, to find whether the defendant had acted up to the rules which it had prescribed for itself and others. The instruction to find whether it had used its best efforts, was no more nor less than that.

The request to charge, that if the defendant exercised ordinary care and diligence, and paid in good faith, it was excused, was properly refused. The defendant had stipulated with the plaintiff to use its best efforts. Unless that phrase has the same meaning, as ordinary care and diligence, it would have been a misleading of the jury to have put the latter to them. And we may not say, that the best efforts of such an institution, through its officers, are the same as its ordinary care and diligence. It is true that the opinion in 62 N. Y. (*supra*), does use the last phrase. The contract of the defendant there, did not call for its best efforts; only for its endeavor.

To guard against misapprehension, it is proper to say that we do not mean to declare a new rule. We hold that in the absence of any rules assented to by its customers,

a savings bank is to be governed by the same legal principles which apply to other moneyed institutions. When it has prescribed rules, and its depositor has assented to them, they are the agreement, and each party must keep it, to preserve rights against the other. The extent of the duty which the savings bank is under, will in some degree be measured by the strictness or extent of the rule it has put upon itself. Ordinarily, it is bound to the exercise of reasonable care and diligence, which will be a question of law or of fact, as the proofs are conclusive and undisputed, or debatable and conflicting. It may have used terms which will, as in this case, bind it to the exercise of greater care and diligence.

The judgment appealed from should be affirmed.

All concur except EARL, J., not voting.

Judgment affirmed.