JAMES WALL, Appellant, v. EMIGRANT INDUSTRIAL SAVINGS BANK, Respondent.

*Savings bank — payment to a stranger — contributory negligence — when a right is waived by not asserting it on the trial.*

A bank-book, issued by a savings bank, contained the following rules: " The pass-book shall be the voucher of the depositor, and the possession of the pass-book shall be sufficient authority to the bank to warrant any payment made and entered in it. The bank shall not be liable or called upon to make any payment without the presenting of the pass-book at its counter that the proper entry may be made in it." It contained also the following: " Although the bank will endeavor to prevent fraud on its depositors, yet the payments to persons pro-ducing the pass-books issued by the bank shall be valid payments to discharge the bank."

James Wall made his first deposit in the bank in 1878, and at that time wrote his name in its signature-book. Thereafter, and prior to the payment hereinafter mentioned, a stranger wrote to Wall requesting information as to certain facts, knowledge of which would enable the stranger to answer the test questions com-monly put by the bank to a depositor. Wall answered the letter, giving the information asked for. In 1889 a stranger, calling himself James Wall, appeared at the bank with the pass-book. The paying teller, after examination, thought the signature, in the receipt to be signed and retained, slightly different from that in the signature-book. He asked the stranger several of the test questions, and these he answered correctly. The teller then paid the sum demanded.

In an action by Wall to compel the bank to pay to him the amount which it had thus paid to the stranger :

*Held,* that, notwithstanding the rules of the bank, it was bound to exercise, in making a payment, reasonable care and diligence.

That the plaintiff, in furnishing a stranger with information as to the county in Ireland in which he was born, the ship in which he emigrated and his mother's name, thus enabling the stranger to answer the test questions, was guilty of such contributory negligence as barred a recovery as matter of law.

That, upon the facts, this defense presented a question of law which the court properly decided in favor of the bank.

(ANDREWS, J., dissenting, on the ground that the case should have been submitted to the jury.)

After deducting this money paid to the stranger there still remained a balance in the plaintiff's savings bank-book to his credit. The complaint in the action claimed the whole amount of this account, and alleged a refusal by the bank to pay the whole amount.

Upon the trial the plaintiff did not ask to recover for the balance.

*Held,* that it was too late on appeal to raise the question that he was entitled to judgment for this balance, and that the court would not, because such judgment had not been rendered for this balance, order a new trial.

APPEAL by the plaintiff James Wall from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 25th day of June, 1891, upon a verdict for the defendant, rendered by direction of the court on a trial at the New York Circuit before the court and a jury; and also from an order, entered in said clerk's office, *nunc pro tunc,* as of the 24th day of June, 1891, denying a motion for a new trial.

The action was brought to recover the amount of a bank deposit, part of which it was alleged by the defendant had been paid. The disputed payment was made September 3, 1889. Wall, from the time of the first deposit, never drew an amount from the bank which required his signature. He once drew ten dollars, but the bank did not require a signature for so small an amount.

· *Mitchell & Mitchell,* for the appellant.

*Coudert Brothers,* for the respondent.

O'BRIEN, J. :

In *Kummel* v. *The Germania Savings Bank* (127 N. Y., 492) it is said : " Assuming that the by-laws printed in the book are binding upon the depositor and constitute a contract between the parties, we still think that the duty devolves upon the officers of the bank to exercise care and diligence in order that their depositors may be protected from fraud and larceny." In another form the

rule is thus stated in *Allen* v. *Williamsburgh Savings Bank* (69 N. Y., 319): "The officers of savings banks, acting under rules such as those shown to us in this case, are bound to the exercise of care and diligence, up to the mark which is fixed for the bank by those rules." "The extent of the duty which the savings bank is under will in some degree be measured by the strictness or extent of the rule it has put upon itself. Ordinarily it is bound to the exercise of reasonable care and diligence, which will be a question of law or of fact as the proofs are conclusive and undisputed or debatable and conflicting."

Whether or not the defendant failed to comply with the duty devolving upon it, of exercising reasonable care and diligence to protect its depositors from fraud or larceny, resort must be had to the evidence to determine whether it was presented in such form as to make it a question of fact for the jury or one of law for the court.

The circumstances under which the moneys were paid out were detailed by the paying teller of the defendant, who testified: "The pass-book came to me in the regular course, with a draft ticket in it, signed James Wall; it had been presented at the other window before it came to me, and upon its arrival at my window I took the ticket out of the book, and either at that time or a minute or two afterwards I ran my eye over the account to see if there was money enough in it to pay the demand.   *   *   *   I then took the draft ticket, signed James Wall, over to this book, which lay a little at my right on a desk, and compared the signatures. I then asked the person who presented the book, and who was in the line, what his name was: He said 'James Wall;' I then asked him what county in Ireland he was born in, and he said 'County Louth;' I asked him what ship he came over in, and he said the 'Somerset;' I asked him his mother's maiden name, and he said 'Ann Levins.' Then, upon the strength of the comparison and those answers, I paid him the money after asking him how much he wanted."

Upon cross-examination, he testified that there were some slight discrepancies between the signatures upon the signature-book of the bank and the ticket presented by the person attempting to draw the money, and he stated that this put him on his guard, and it was for that reason that he asked the question, though, as he stated, he thought, upon comparing the signatures that it was Wall's, although

there were one or two slight changes; that eleven years had elapsed, and that this, among persons not accustomed to write frequently, makes a difference in the regularity of the signature.

Unless the force of this testimony is impaired, rebutted or destroyed, we fail to see, upon such testimony undisputed, how any inference could be drawn by a jury that the defendant had violated the rule which required, in paying over money to one in possession of the pass-book, the exercise of reasonable care and diligence. Not only was it not impaired, but in many respects it was supported by the testimony of the signature clerk of the defendant, who testified that he heard the teller asking the questions that were on the test-book containing the signature and test questions. The plaintiff offered no testimony to contradict these witnesses showing the conduct of the defendant's employees at the time the money was paid; and assuming such testimony to be true, no inference could be drawn therefrom that the bank was wanting in that degree of care and diligence which the law would exact to prevent fraud upon depositors. The only question which upon this testimony could remain for the jury would be the credibility of the witnesses, which was in no way assailed or impugned, or in any way affected, unless it is to be assumed that their relations as employees of the defendant, and the interest therefrom resulting, would subject their testimony to scrutiny and suspicion. There are cases holding that where a cause of action is supported by the testimony of a single witness, who is interested in the result thereof, and no evidence is presented to the contrary, that the jury is not obliged to credit such testimony, or find a verdict thereon; but that the question of credibility of such witness is to be left to the jury, and a verdict against such witness will not for that reason be disturbed. Those cases, we take it, however, are cases where the burden of proof is upon the plaintiff to establish a cause of action. Here, it is true, the manner in which the moneys were paid out raised a presumption in plaintiff's favor which shifted the affirmative of establishing its defenses upon the defendant, and the defendant having assumed the affirmative and presented evidence tending to support its defense, which was in no way contradicted or impaired, a verdict, under such circumstances, for the plaintiff would have been against the weight of evidence, and would necessarily have to be set aside. We do not regard the conclusion to be reached

upon such evidence as either debatable or conflicting, and it, therefore, properly presented a question of law for the court, and justified the direction which was made.

But, however this may be, if there was any question of fact to be presented to the jury, as to defendant's negligence, it would have been error to have submitted it in view of the other testimony in the case, showing, conclusively, that the proximate cause of the fraud or loss that resulted to the plaintiff was due to his own negligence. It appeared that, prior to the presentation of the pass-book to the bank, the plaintiff had received a letter requesting him to furnish to a stranger the very information which enabled the person presenting the book to answer the test questions which were in the defendant's test or signature-book.   Even though we assume, therefore, that the discrepancy in the signatures was sufficient to demand scrutiny and an inquiry into the right of the one presenting the pass-book to the money, the suspicion, thus aroused in the employees of the bank, was allayed by correct answers given to the test questions relating to the plaintiff's birth place, mother's maiden name, and the ship upon which he came over.   These had been furnished to the stranger, who, it would appear, had obtained the plaintiff's pass-book, and being in possession of the latter and of the necessary information, was placed in a position to perpetrate the fraud which resulted in injury to the plaintiff.   As to plaintiff's carelessness in thus supplying the information to a stranger, no question is presented; and however strongly we may hold the rule to be, in respect to the degree of care required of a savings bank or bank of deposit, it is equally well settled that it is the duty of a depositor, upon his side, to use all reasonable care against fraud upon the bank.   There being no dispute but that this duty which was imposed upon the plaintiff had been violated, and the plaintiff's own testimony having shown that he was negligent, this alone was sufficient to bar his right to a recovery and justified the verdict which was directed for the defendant bank.

A more difficult question presented on this appeal relates to the right of the plaintiff to recover the balance of his deposit with the defendant, which he is and was, undoubtedly, entitled to receive. It was conceded that, in addition to the $540 which had been fraudulently withdrawn, that plaintiff had still to his credit with the defendant bank the sum of $141.08 and interest.   Had the plaintiff

requested a direction for this amount, it should have been granted. In his complaint he claimed the whole amount, and the demand alleged upon the defendant related to the whole amount, and the refusal to pay had reference to the whole amount, the defendant, so far as the evidence shows, never having been requested to pay this sum of $141.08, which still remained to the credit of the plaintiff. It is true that this amount was included in the entire amount demanded by the plaintiff, and the right to recover the entire amount was denied by the defendant. Plaintiff did not make any claim for this balance on the trial, although it was conceded that that amount stood to the credit of his account, and at the end of the trial he asked to go to the jury upon "issues of fact denied." The testimony showed that the only issue of fact denied was as to defendant's liability for the $540 which had been withdrawn by some third person from the defendant bank. There was no evidence that any demand had ever been made for this specific sum, but, on the contrary, the evidence was that the demand had been made for the entire amount which had been deposited by plaintiff, which included this, together with the $540 withdrawn. We do not agree with the respondent, that to have obtained this amount it would have been necessary to produce the pass-book, or that it would be unreasonable to require it to take the risk of payment of this $141.08 without the presentation of the pass-book, for the reason that, upon the facts appearing on the trial, it was evident that the pass-book had been taken from the plaintiff's possession, and its absence could not be regarded as destroying the plaintiff's right to the balance of the deposit. As held in *Kummel* v. *The Germania Savings Bank* (*supra*), " The pass-book of a savings bank cannot be regarded as negotiable, and its possession does not constitute proof of a right to draw money thereon. The book imports a liability of the bank to the depositor for the amount of moneys entered therein as deposited, and an agreement to repay at such time and in such manner as he shall direct." We think, however, that a trial which proceeded entirely upon the question as to plaintiff's right to recover $540 which had been withdrawn under the circumstances appearing from the testimony, and the court's attention being directed solely to that contention presented between the plaintiff and the defendant, that it would be violating the rules relating to the conduct of litiga-

tions and the proceedings upon a trial to destroy the whole effect thereof by giving undue weight to a point, which, however good, was not then presented, but is presented for the first time upon the appeal. This amount the plaintiff can obtain from the bank, and while it may be regarded as a hardship that, with this balance in his favor, he should have suffered a judgment for costs, we do not see that the court below was to blame ; nor can we, without doing violence to what we regard as the settled rules of practice, afford any relief. The effect of holding that this point was well taken would be to require a new trial of a question which was once litigated, because the court had failed to consider a question which could have been resolved in plaintiff's favor, but which was never either raised or suggested to the court.

We are of opinion, therefore, that the judgment should, in all respects, be affirmed, with costs.

VAN BRUNT, P. J., concurred.

ANDREWS, J. (dissenting) :

This action was brought to recover the sum of $681.08, with interest, being the balance of moneys deposited by the plaintiff with the defendant. The answer set up several defenses : First. That at the time the plaintiff opened an account with the defendant he received a pass-book, and that one of the conditions upon which the defendant received plaintiff's deposits, and which was printed in the pass-book, was as follows : " The pass-book shall be the voucher of the depositor, and the possession of the pass-book shall be sufficient authority to the bank to warrant any payment made and entered in it. The bank shall not be liable or called on to make any payment without the presenting of the pass-book at its counter, that the proper entry may be made in it." That at the time the plaintiff demanded payment of the moneys sued for he did not present the pass-book. A second defense was : That among the articles or conditions of the agreement made between the bank and the plaintiff at the time of the deposit and the acceptance thereof was the following : "Although the bank will endeavor to prevent fraud on its depositors, yet the payments to persons producing the pass-books issued by the bank shall be valid payments to discharge the bank ; " that on September 3, 1889, a person representing himself

to be the plaintiff produced the pass-book issued by the bank to the plaintiff, and the defendant, believing such party to be the plaintiff, paid him the sum of $540. The third defense was: That when such party presented the pass-book, the defendant, in order to fully discharge its duty to plaintiff, made various inquiries touching his identity, the answers to which satisfied the defendant that he was entitled to receive the money; that the answers so given were based upon information received from the plaintiff himself, and that the payment of the money was due to the negligence of the plaintiff in confiding to the person who obtained the $540 information which should not have been confided to a stranger.

Upon the trial the defendant claimed and was awarded the affirmative. The undisputed facts established by the testimony were as follows: The plaintiff made his first deposit with the defendant and received a pass-book on January 10, 1878. The conditions or agreement, upon which it is claimed the deposit was received and the pass-book issued, were printed in the inside of the cover of the pass-book and contained, among other things, the two paragraphs set up in the answer and above quoted. At the time of such first deposit the plaintiff was asked certain questions, and the answers to those questions were entered in the signature-book. The questions asked were as to the plaintiff's residence, occupation, the year when he was born, where he was born, what vessel he came over in, his father's Christian name and his mother's maiden name. The answers to these questions were written down in the signature-book and were as follows, respectively: 12 Little 12th street; laborer; 1845; county Louth; 1867, per "Somerset;" Christopher; Ann Levins; and the plaintiff was required to and did write his name, James Wall, in such signature-book. On September 4, 1889, the plaintiff had on deposit to his credit the sum of $681.08; and on or about that day a person appeared at the bank, with the pass-book, and represented that he was the plaintiff and was paid the sum of $540, leaving to the plaintiff's credit the sum of $141.08. The person drawing the money signed a receipt for the same with the name James Wall.

Mr. Connell, paying-teller, was called as a witness on behalf of the defendant. He testified that at the time of paying the $540 he compared the signature on the receipt, given by the party who received the money, with the signature of the plaintiff in the signa-

ture-book. . He said that upon the comparison he saw there were one or two slight changes; that when he made the comparison he saw a slight discrepancy, though not as clearly as shown him at the trial; that such discrepancy was sufficient to bring the matter to his mind and to put him on his guard. He also testified that after such comparison of the signatures he asked the person presenting the pass-book the following questions: Where he was born; the name of the ship he came over in and his mother's maiden name; and that these questions were correctly answered; that is, the answers were the same as those given by the plaintiff when he made the first deposit and entered in the signature-book. On cross-examination this witness was asked the question: "It was a sufficient discrepancy to bring the matter to your mind and to put you on your guard?" And he answered: "To put me on my guard; and for that reason I asked carefully the other questions to corroborate my judgment." On cross-examination he was also interrogated closely as to the differences between the signatures, and admitted that there were some quite material differences.

Mr. Crowley, signature clerk, was called and examined on behalf of the defendant. He testified that he was present at the time the $540 was paid, but heard the paying-teller ask but one question, and that was in reference to the vessel in which the party applying for the money came over from Europe.

The papers on appeal contain a photograph of the signature written by the plaintiff at the time he made the first deposit, and also of the signature made by the party who drew the $540, upon the receipt, therefor. It is obvious, upon inspection of these two signatures, that there are material differences between them.

At the close of the testimony, on motion of defendant's counsel, the court directed a verdict for the defendant, to which direction the plaintiff excepted. The plaintiff's counsel also moved for leave to go to the jury, upon the issues of fact, and upon the question of negligence; which motion was denied, and plaintiff's counsel excepted.

We are of the opinion that the judgment appealed from must be reversed because of the denial of the application on behalf of plaintiff to go to the jury upon the question of the negligence of the officers of the defendant.

Notwithstanding the notice printed on the inside of the cover of the pass-book, that all payments to persons producing the pass-books issued by the bank shall be valid payments to discharge the bank, nevertheless, it is well settled that the defendant and its officers were bound to exercise ordinary or reasonable care in making payments, although the pass-book was presented by the person to whom the payment was made. (*Appleby* v. *Erie Co. Savings Bank*, 62 N. Y., 12; *Kummel* v. *Germania Savings Bank*, 127 id., 488.) Although the testimony in the case at bar is not conflicting, still it was of such a character that different inferences might be drawn from it by different persons, as to whether or not the officers of the defendant exercised ordinary care in paying the $540 to the person who presented the book. The signature made by the plaintiff in the signature-book, when he made the first deposit, and the signature made by the party who produced the pass-book, and to whom the $540 was paid, were quite dissimilar; and different persons might reach different conclusions as to whether, in view of such dissimilarity, the paying teller of the defendent was not negligent in paying out the $540. Moreover, the dissimilarity of the signatures was such that it attracted the attention of the paying-teller and put him, as he testified, " on his guard : " and different persons might reach different conclusions as to whether it was not negligence on the part of the teller to pay the money without asking other questions besides the three which he did ask. It is true that he asked three questions and received correct answers, thereto; but there were other questions which, had been answered by the plaintiff, when he made the first deposit, and which might have been put to the party who presented the pass-book. These questions were : The residence; the occupation; the year when he was born; the year he came over in, and the father's name. So far as appears by the evidence, if these questions had been asked, the party presenting the pass-book could not have answered any of them. Under these circumstances, the authorities are clear that the question of negligence should have been submitted to the jury.

In Shearman and Redfield on Negligence (§ 54) the law upon this subject is stated as follows : " The question of negligence must be submitted to the jury as one of fact, not only where there is room for difference of opinion between reasonable men as to the exist-

ence of the facts from which it is proposed to infer negligence, but also where there is room for such a difference as to the inferences which might fairly be drawn from conceded facts. Where this is the case the issue must go to the jury, no matter what may be the opinion of the court as to the value of the evidence or the credibility of the witnesses," and many cases are cited in support of this doctrine.

In *Willis* v. *Long Island Railroad Company* (34 N. Y., 670) the court said : " On the trial of an issue of that nature " (negligence), " if there is any doubt, however slight, either as to what facts are established by the testimony, or as to the conclusion in respect to the fact of negligence, that may be drawn legitimately from the circumstances proved, by the average of men of common sense, ordinary experience and fair intentions, the case should not be taken from the jury. It is only where the case is entirely clear upon the testimony, where there is no room for rational doubt either as to the circumstances proved or as to the conclusions of fact, which may properly be drawn from them, that a judge is justified in deciding the question of negligence as matter of law."

In *Waite* v. *Agricultural Insurance Company* (13 Hun, 371) the court said : " The facts and circumstances are such that different minds will come to different conclusions on the question of occupancy, and that makes it a very proper case for a jury. It does not follow that because there is no contradictory testimony the court must take the question from the jury and determine it as one of law ; on the contrary, if different results will be reached by different minds, the question must go to the jury."

In *Appleby* v. *Erie County Savings Bank* (*supra*) which was a case similar to the case at bar, the court directed a verdict for defendant, and such direction was held to be correct in that particular case. CHURCH, Ch. J., delivering the opinion of the court, however, said : " The only point upon which I have entertained any doubt in this case is upon the question whether the teller was negligent in not observing the dissimilarity between the signature upon the receipt, upon which the money was paid, and the signature of the plaintiff upon the book when the first deposit was made, should not have been submitted to the jury." * * * " In this case if the two signatures were so dissimilar as when compared the dis-

crepancy would be easily and readily discovered by a person competent for the position, then the failure to discover it would be evidence of negligence which should have been passed upon by the jury. It would not be evidence of negligence if the difference was not marked and apparent, or if it would require a critical examination to detect it, and especially if the discrepancy was one as to which competent persons might honestly differ in opinion.

"The plaintiff is the appellant and must establish that an error was committed on the trial; and the difficulty is that it does not appear affirmatively that the difference in the signature was so manifest as to require the question to be submitted under the foregoing views. There was no direct evidence that it was of that character, and we cannot have, as the court below had, the benefit of a personal inspection. The difference in certain letters may not have been such as to indicate a different handwriting, and the same remark is applicable to evidence that one was better than the other We have no means of determining but that the court decided that the dissimilarity was of such a character that negligence could not, within the views above expressed, be predicated upon a failure to discover it, and such decision would not be erroneous in law. The tendency of the evidence is in that direction."

*Kummel* v. *Germania Savings Bank* (*supra*) was also a case in which the officers of the defendant had paid money belonging to the plaintiff to a person not entitled to receive it, upon the presentation of the pass-book and upon a forged receipt. In that case the question of the negligence of the officers of the defendant was submitted to the jury, and the plaintiff had a verdict in his favor. HAIGHT, J., delivering the opinion of the court, said: "The question thus presented for the determination of the jury was as to whether the officers of the defendant had exercised ordinary care and diligence in seeing that the person to whom the money was paid was authorized to receive it. The first question which we are called upon to consider is as to whether the evidence was of such a character as to justify the submission of this question to the jury. The $350 item was paid by the cashier, Frederick Koch. He states that he asked the person presenting the bank-book where he lived, and that he at first answered New York, and that afterwards he stated that he had lived in Brooklyn, before that, at 56 Tillary street; that he did not ask

him any further questions but paid him the money. The other payment was made by Oscar Thomas, a clerk, who assisted the cashier. He judged from the first that the signature to the receipt was not exactly right, and asked the person presenting it if he could not write with a more fluent hand, and received the answer that he was not feeling well. He thinks he put the other questions to him appearing upon the signature-book, and that they were answered correctly.

"As to the payment of the $350 receipt, the question of negligence was clearly for the jury. It affirmatively appears that the cashier did not avail himself of the means at hand to identify the person presenting the pass-book and forged receipt. As to the $100 payment, the question is involved in more doubt, but in view of the fact that the acting cashier making the payment was an interested witness, that the signature to the receipt was such as to lead him to judge that it was not right, and that upon the trial the signature of the plaintiff, as well as that upon the receipt, was before the court and the jury for comparison, upon which the variance may have been so great as of itself to put a prudent person upon inquiry, we are inclined to the view that this question was also one for the jury, and that no error is apparent that would justify a reversal;" and the judgment was affirmed.

In the case at bar the dissimilarity of the signatures attracted the attention of the paying teller, and, as he testified, put him on his guard; and he asked but three questions out of eight which might have been put. Under the authorities above mentioned, and many others that might be cited, we are of the opinion that the question of negligence should have been submitted to the jury.

It was set up in the answer that the payment to the wrong person was caused partly by the negligence of the plaintiff, in disclosing the answers to some of the above mentioned questions to a stranger, and there was some evidence upon the trial that tended to support this allegation. If, however, the question of contributory negligence on the part of the plaintiff was involved, that question also should have been submitted to the jury.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

Judgment affirmed, with costs.