(17 Misc. Rep. 574)

GEITELSOHN v. CITIZENS' SAV. BANK.

(Supreme Court, Appellate Term, First Department. July 27, 1896.)

1. SAVINGS BANKS—PAYMENT OF DEPOSIT—RULES.
   A rule of a savings bank that the pass book shall be the voucher of the depositor, and that presentation of it shall be sufficient authority to the bank to make any payment to the bearer, does not relieve the bank from liability for paying a deposit to a person not the depositor, where any fact or circumstance existed calculated to put the bank on inquiry.

2. SAME—IDENTITY OF DEPOSITOR.
   A savings bank, on opening an account with a person who could not write, asked him certain questions, the answers to which were entered in the signature book. Afterwards some one stole the pass book, and presented it to the bank. He was asked the questions which had been asked the depositor, and answered all of them satisfactorily, whereupon the bank paid the amount of the deposit to him. Held, that the bank exercised due care to ascertain the identity of the person presenting the pass book. 39 N. Y. Supp. 840, reversed.

3. SAME—SUSPICIOUS CIRCUMSTANCES.
   The fact that the person presenting a pass book demands the entire amount on deposit, where only small sums had been drawn out theretofore, is not a suspicious circumstance, which should put the bank on inquiry as to the identity of the person presenting the book.

4. SAME—QUESTION FOR JURY.
   In an action against a savings bank to recover the amount of a deposit paid to a person who stole the depositor's pass book, the teller testified that he applied the usual tests for identification, according to the custom of the bank, and his testimony was not contradicted, nor was his credibility impeached. Held, that it was error to submit to the jury the question whether reasonable care was used by the bank.

5. SAME—POSSESSION OF PASS BOOK.
   In such case, where the rules of the bank provide that presentation of the pass book shall be sufficient authority to the bank to pay the deposit to the bearer, it is error for the court to charge that possession by a stranger of the pass book of a depositor constitutes no right to draw the money thereon.

Appeal from city court of New York, general term.

Action by Louis Geitelsohn against the Citizens' Savings Bank to recover $982.50 alleged to be the amount standing to the credit of plaintiff on defendant's books. A judgment entered on a verdict in

favor of plaintiff for the amount claimed, with interest and costs, was affirmed by the city court (39 N. Y. Supp. 840), and defendant appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

John E. Parsons and John Pirsson, for appellant.

David Neuberger, for respondent.

DALY, P. J.    Between August 21, 1886, and December 3, 1889, the plaintiff made 38 deposits with defendant, aggregating $1,262, and withdrew on nine occasions between March 30, 1887, and January 7, 1890, sums aggregating $320.    Thirteen days after the last withdrawal the whole balance, with interest, or $990.84, was drawn and the pass book surrendered.    The verdict establishes that this withdrawal was not by the plaintiff, and the question in the case is whether the bank is exonerated by payment to a stranger having possession of the pass book, and whether it exercised due care to prevent fraud upon its depositor.    The pass book of the plaintiff, delivered to him by the bank when he opened his account, contained certain "rules and regulations" printed in English, French, and German (in which last-named language plaintiff was examined at the trial through an interpreter) declaring that "every person on becoming a depositor with this bank shall thereby consent and agree to be governed by the by-laws, rules, and regulations of the bank," and that "all deposits and withdrawals will be entered in a book given to the depositor on making his first deposit, which shall be the voucher of the depositor, and the evidence of his property in the institution, and the presentation of the book shall be sufficient authority to the bank to make any payment to the bearer thereof," and "all payments to persons producing the pass book issued by the bank shall be valid payments to discharge the bank."    But, notwithstanding these rules, payment by the bank to a person not entitled to receive it, though he may have possession of the bank book, and present it, will not discharge the bank if, at the time of payment, a fact or circumstance was brought to the knowledge of the bank officers calculated to excite the suspicion of and inquiry by an ordinarily careful person, and they failed to make inquiry, or to exercise at least ordinary care and diligence.    Gearns v. Bank, 135 N. Y. 557, 32 N. E. 249; Tobin v. Institution, 6 Misc. Rep. 110, 26 N. Y. Supp. 14.    When the plaintiff opened his account the bank entered in its signature book (he could not write his name) his answers to certain questions as to his residence, occupation, date, and place of birth, and his father's and mother's names; and the person who presented the pass book and drew out the money on January 20, 1890, was questioned by the teller as to all these particulars, and answered them correctly, stating besides that he could not write.    This was the testimony of the teller of the bank, who, however, did not speak from recollection, since he stated, "I do not remember the circumstances of this payment; I merely know that I paid the money"; but stated with certainty that he asked all the questions, because it was marked so.    If the jury believed this testimony (and it does not appear from the record that

its credibility, as coming from an interested witness, was specifically submitted to them), then the case presents no fact or circumstance brought to the knowledge of the bank officers calculated to excite suspicion or inquiry in pursuing the custom or regulation adopted by them to prevent fraud (Kummel v. Bank, 127 N. Y 491, 28 N. E. 398; Appleby v. Bank, 62 N. Y. 12); the putting of such questions and comparing them with the entries in the signature book being a custom or regulation for that purpose, when, as in this case, the teller did not recognize the depositor among the persons having the 33,800 accounts with it at the time, the drafts from such accounts averaging 300 per day. The plaintiff urges that the withdrawal on January 20, 1890, of the whole deposit was a circumstance which should have excited inquiry by the bank officers, inasmuch as reference to the ledger would have disclosed the fact that in the previous three years the depositor had withdrawn small sums, not exceeding $80 at one time; but I fail to find anything suspicious in this circumstance. It is the right of a depositor to withdraw his whole deposit at any time without question. Deposits in savings banks are for the purpose of accumulation and withdrawal at the pleasure of the customer. The fact that he never before drew out his whole deposit is not significant, for the habit of withdrawing small sums establishes no custom with which the withdrawal of the whole deposit is at variance. His wanting all the money to which he was entitled was not a circumstance calculated to alarm a prudent bank official to the extent, as urged by plaintiff, of enforcing the rule, for 90 days' notice of withdrawal. On the contrary, such a requirement, in an ordinary case, would be most unreasonable. If there is nothing in the demeanor of the applicant, or in the replies to the questions put to him for the purpose of identification, to excite suspicion, the fact that the whole deposit is withdrawn is not a circumstance calculated to arouse inquiry, and it should not be left to a jury to say whether it is or not. The general term takes the view that the failure of the bank officers to "require any identification of the person presenting the pass book," and to "send to the plaintiff's residence, at 101 Orchard street, about five blocks from the bank's office," was want of ordinary care. These precautions are not required unless there exists some fact or circumstance to excite suspicion and inquiry. The bank had applied the test for identification according to its custom, and the applicant stood the test. Without ground for suspecting him to be attempting a fraud, further inquiry was not required by law. As there was no fact or circumstance to put the bank officers upon inquiry, the defendant was entitled to a dismissal of the complaint according to the motion made at the close of the plaintiff's case and at the close of the evidence. The court left it to the jury to say whether the teller and the officers of the bank used that care and prudence in the payment of this money which a careful and prudent man would have used in a transaction of his own under the same condition of affairs. There was no evidence that they did not, if the teller's testimony that he asked the questions was to be believed. Had the jury the right to discredit him, in the absence of impeachment, contradiction, or reasonable grounds of doubt?

If they had, then the bank is defenseless; and I find no authority for a ruling which would lead to such a result.

Wherever a case between the savings bank and its depositor has been held proper for submission to a jury, the facts have justified a doubt as to the observance of the rules of the bank and the observance of ordinary care; as where it was shown that on one occasion there was a failure to ask the usual questions, and the clerk who made the payment suspected the signature of the person withdrawing the deposit (Kummel v. Bank, 127 N. Y. 488, 28 N. E. 398); or where there was a difference in the signatures (Allen v. Bank, 69 N. Y. 317; Hager v. Bank [Super. Buff.] 31 N. Y. Supp. 448; Tobin v. Institution, 6 Misc. Rep. 110, 26 N. Y. Supp. 14; Saling v. Bank [Com. Pl.] 7 N. Y. Supp. 642); or where there was an error in the description of the assumed depositor executing the power of attorney to another to withdraw the deposit, he being described as "executor" on that instrument, instead of "administrator" (Gearns v. Bank, 135 N. Y. 557, 32 N. E. 249). On the other hand, where the dissimilarity of signatures was slight, a verdict directed by the court for the defendant was sustained. Appleby v. Bank, 62 N. Y. 12. It would seem, therefore, that where the only facts appearing are that payment of the deposit is made to a person presenting the pass book, whom the bank officials do not know, and have no reason to suspect to be other than the depositor, and who correctly answers the questions put to him for identification, as in this case, the bank will be exonerated from any further claim for the same deposit; and that the fact that the evidence on behalf of the bank as to the circumstances of payment is given by the person who made it, and who testifies, not from recollection, but from the course of business which he is reasonably certain was followed, as in this case, will present no question for the jury in the absence of facts tending to create a doubt as to the correctness of his testimony.

Certain exceptions of the defendant were well taken. It was error for the court to charge that possession by a stranger of the pass book of a depositor constitutes no evidence of a right to draw money thereon. This completely ignores the rules under which the deposit was received, providing that the depositor's pass book shall be "the evidence of his property in the institution, and the presentation of the book shall be sufficient authority to the bank to make any payment to the bearer thereof," and that "all payments to persons producing the pass book issued by the bank shall be valid payments to discharge the bank." The courts have uniformly given effect to such provisions where ordinary care on the part of the officer is exercised, while holding that the possession of the pass book is not conclusive as to the holder's right to the deposit. Israel v. Bank, 9 Daly, 507, and cases above cited. Only one case gives color to plaintiff's claim for the correctness of the instruction. In Smith v. Bank, 101 N. Y. 58, 4 N. E. 123, it is said that "a pass book is not negotiable paper, and its possession constitutes in itself no evidence of a right to draw money thereon"; but this clearly excludes the effect of the rules taken in connection

with the possession of the book. As we have seen, possession of the book, when there is no fact or circumstance to excite suspicion or inquiry, and when customary and ordinarily careful means of identification are employed, justifies payment to the holder. The instruction as given, without the qualification found in the language quoted from the case last cited, was calculated to mislead, and was error. The same may be said of the further instruction that the possession of the pass book does not constitute proof of a right to draw money thereon notwithstanding the rules above quoted.

There was also error in the instruction that the jury were entitled to take into- account the fact that the plaintiff was a foreigner, unacquainted with the English language; it appearing that the rules were also printed in German, and that he was acquainted with that language. For the same reason it was also error to refuse to charge that the depositor was chargeable with notice of the rules except with the qualification, "provided they are printed in a language known to the depositor."

An interesting question is raised by the court's instruction at plaintiff's request that "this action is not one framed 'in negligence,' and the plaintiff is not bound to show freedom from negligence"; and by the refusal to charge at defendant's request, "It is the duty of the depositor to keep his book in a safe place, and if he keeps it so carelessly that it is stolen he may not recover against the bank." The introduction of the rule as to contributory negligence is a novelty in these cases. Authority for the defendant's position is found in Wall v. Bank, 64 Hun, 249, 19 N. Y. Supp. 194, where a recovery was defeated because the depositor had been guilty of negligence in furnishing to a stranger information which enabled the latter to answer questions propounded by the bank officers to test the identity of the claimant. The necessity for the rule in such a case is not apparent. If the holder of the pass book answers the questions correctly, and there are no suspicious circumstances putting the bank officers upon inquiry, payment exonerates the bank, and the negligence of the depositor is immaterial. If there are suspicious circumstances calculated to excite inquiry, and the bank officers fail to exercise due care in making inquiry, the bank would be liable, notwithstanding the negligence of the depositor. In the present case the assumed negligence of the plaintiff in leaving his pass book in a place accessible with little effort to a person whom he had admitted for three months as a room mate and member of his household, would not relieve the defendant from the necessity of putting the test questions for identification to the person presenting the pass book. If they neglected to apply such a test, the negligence of plaintiff would have contributed in no wise to the injury. Having done so, his negligence was equally immaterial. The negligence of plaintiff in permitting a stranger to have access to his pass book would be important if possession by the stranger entitled him to receive the money; but as such possession does not relieve the bank from the exercise of care to prevent a fraud upon its depositor, such negligence in no wise contributed to the injury,

and the rulings of the court in that respect were correct. For the error in the other rulings referred to, however, the judgment must be reversed.

Judgment reversed, and new trial ordered, with costs of appeal in this court and the city court and of the former trial to appellant, to abide event. All concur.