### KENNY v. HARLEM SAVINGS BANK.

(Supreme Court, Appellate Term. December 29, 1909.)

1. BANKS AND BANKING (§ 306*)—SAVINGS BANKS—LOSS OF BANK BOOK—PAYMENT OF DEPOSIT TO PERSON NOT ENTITLED.

Plaintiff deposited moneys in defendant savings bank, and, being unable to write, signed the bank's signature book with his mark. Later he learned to write, and then recorded his signature with the bank, and thereafter drew three drafts on the bank, which were paid. Subsequently his bank book was stolen from him, and the thief presented it to the bank, and drew eleven drafts on the deposit, signing plaintiff's name. The forged signatures did not resemble the genuine signatures to the three drafts drawn by plaintiff, and the thief was asked the test questions concerning plaintiff's age, occupation, and family, and answered them correctly. Plaintiff visited the bank and demanded his money, but was told that it had been paid to the forger, and would not again be paid. *Held*, that a verdict should not have been directed for plaintiff, but that the case should have gone to the jury on the question whether defendant used due care in the payment of the forged drafts.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1169; Dec. Dig. § 306.*]

2. BANKS AND BANKING (§ 306*)—SAVINGS BANKS—ACCRUAL OF CAUSE OF ACTION.

Where a savings bank depositor has informed the bank that his book has been stolen from him and that he cannot produce it, and demands payment, which is refused, without any request for him to comply with the special rules or by-laws authorized by Banking Law (Consol. Laws, c. 2) § 152, forbidding payment to a depositor unless he produces his pass book, but authorizing the trustees to provide by their by-laws for payments where pass books are lost, the depositor's cause of action against the bank accrues immediately on such refusal.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1183; Dec. Dig. § 306.*]

Lehman, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Owen Kenny against the Harlem Savings Bank. Verdict was directed for defendant (61 Misc. Rep. 144, 114 N. Y. Supp. 749), and plaintiff appeals. Reversed.

Argued before GIEGERICH, GOFF, and LEHMAN, JJ.

Edward Mandel (Samuel I. Frankenstein, of counsel), for appellant.

Reuben Mapelsden (Herbert S. Ogden, of counsel), for respondent.

GIEGERICH, J. The plaintiff deposited moneys in the defendant savings bank, but, being unable to write, could not sign in the bank's signature book except by his mark. He later learned to write his name, and then recorded his signature at the bank. Thereafter, at different times, he drew three drafts on the savings bank, which he presented,

and which were duly paid. The last of them was presented and paid on April 22, 1907.

On October 19, 1907, a draft, signed in the plaintiff's name, was presented at the bank by one Farley, who also produced the plaintiff's bank book and answered the test questions put to him by the paying teller. This draft was paid, and thereafter 10 other drafts, similarly signed, were presented by Farley, who produced the bank book on each occasion, and were paid to him. The 11 drafts last mentioned had been forged by Farley, who had got possession of the bank book without the plaintiff's knowledge, and, happening to be a native of the same town in Ireland, had been able to answer the teller's questions concerning the plaintiff's age, occupation, and family. The 11 forged drafts were paid between October 19, 1907, and March 20, 1908.

On March 22, 1908, the plaintiff discovered that his bank book was missing and at once notified the bank. Farley was arrested upon the complaint of an officer of the bank, and, three days later, died in the Tombs prison. The plaintiff then visited the bank again and demanded his money, but was told that it had been paid to Farley, and that the bank would not pay it over again. He had previously informed the bank that he could not produce the bank book; that it had been taken from the locked drawer in which he was accustomed to keep it. The 14 drafts, paid as above mentioned, were received in evidence, and are reproduced in the record. The signatures upon the 3 genuine drafts are practically alike. Those upon the 11 forged drafts are also very uniform and similar in appearance, one with another. Between the genuine and the forged signatures there is not the slightest similarity.

The only witness for the defendant was its paying teller. He testified that he examined the signatures upon the forged drafts in each instance, and compared them with the signature on record in the signature book, and admitted that there was a distinct difference between the two, and that on each occasion he was doubtful whether Farley was the depositor, but paid him upon his producing the bank book and answering the test questions, which, he testified, he put to Farley in every case. At the close of the case the trial judge directed a verdict for the plaintiff for the amount of his deposit and interest, less all payments made both to the plaintiff and to Farley. The plaintiff's motion to go to the jury upon the question whether or not the bank had exercised due care was denied, and an exception taken.

I think the court erred in directing the allowance to the bank of the payments made upon the forged drafts. I am by no means certain that the plaintiff was not entitled to the direction of a verdict for the full amount of his claim; but he was certainly entitled to go to the jury. Where the signature to a draft is distinctly different from the signature on record in the bank, and totally unlike previous signatures of the depositor, it certainly cannot be held that, as a matter of law, the bank has used due care when it pays the draft without any identification of the person presenting the draft, even though the latter produces the bank book and answers the test questions.

The savings bank, unlike the ordinary bank of discount and deposit, is only liable to the depositor for a payment by mistake upon a forged draft where it has failed to exercise due care in paying away his

funds. But the bank is bound to use ordinary care, and the question whether or not it has used that degree of care in any particular case necessarily depends upon the special circumstances of that case. Kelly v. Buffalo Savings Bank, 180 N. Y. 171, 72 N. E. 995, 69 L. R. A. 317, 105 Am. St. Rep. 720. Where the difference between the signature upon the draft and that on record with the bank is slight, and the bank book is produced, and the test questions satisfactorily answered, it has been held that the bank is not liable. Wall v. Emigrant Industrial Savings Bank, 64 Hun, 249, 19 N. Y. Supp. 194; Ferguson v. Harlem Savings Bank, 43 Misc. Rep. 10, 86 N. Y. Supp. 825. But no case has gone so far as to hold that, where there is no similarity between the signatures, the bank may escape liability, although it pay the draft without identification of the person presenting it; much less that the bank is entitled to the direction of a verdict in its favor.

It is argued that, as the teller knew that the plaintiff had only learned to write at a time subsequent to the opening of his account at the bank, it was reasonable for him to assume that the plaintiff's handwriting would show a material change as time passed, due to a natural improvement and an increasing facility in the use of his pen. Whatever weight this argument might properly have, if addressed to the jury in a close case, it probably would not justify the direction of a verdict in any case, and certainly cannot in the case at bar, where there was an abrupt change from the unformed and laborious characters of the illiterate depositor to the quite regular and fairly formed hand of the forger.

The respondent seeks to sustain the judgment upon the ground that the plaintiff did not establish a cause of action. Counsel for the defendant, when the plaintiff rested, and again after both sides had rested, moved for a dismissal of the complaint upon the ground that, when the plaintiff demanded his money, the bank was not only justified, but was required, to refuse payment under the provision of section 152 of the banking law (Consol. Laws, c. 2), which forbids payment to a depositor unless his pass book is produced at the time. The section further provides, however, that the trustees may provide, by their by-laws, for making payments in cases where pass books are lost, or cannot, for other exceptional reasons, be produced without serious inconvenience to depositors. In the present case the bank was informed that the pass book had been stolen from the plaintiff's drawer, and that he could not produce it, and itself procured the arrest of the thief who had obtained possession of it, and to whom it had made numerous payments, partly upon the strength of his possession of the book. Nevertheless, when the plaintiff made his demand for payment, he was met, not by any request for compliance with special rules or by-laws, or any information that such rules or by-laws had been made by the trustees, but by a flat refusal to pay. I think his cause of action then accrued, and is not affected by the provisions of the section of the banking law just cited.

But, however this may be, and even assuming that the defendant's motion for a dismissal of the complaint should have been granted, the argument does not justify the direction of the verdict, and the consequent judgment upon the merits against the plaintiff.

The judgment and order must be reversed, and a new trial ordered, with costs to appellant to abide the event.

GOFF, J., concurs.

LEHMAN, J. (dissenting). While disclaiming any expert knowledge of handwriting, I think that the 11 forged drafts are not very uniform and similar in appearance one with another. They contain very marked differences, and these differences increase almost from week to week. The first signatures are extremely illiterate, while there is a decided improvement in the handwriting in the last. The first signature contains no capital initial letter. The last few signatures are properly capitalized. It is true, however, that even a layman could determine that all 11 forged drafts are signed either by the same person, or by persons attempting to imitate the same handwriting, while the handwriting on the valid drafts is sufficiently different from that on the forged drafts at least to raise a suspicion in the mind of a layman that they were written by another person. The cashier of the defendant frankly admits that there is a dissimilarity, and that he was suspicious about the forged drafts. Under such circumstances, it was clearly the duty of the officers to institute an inquiry, and the failure to do so would be negligence, for which the bank would be liable. Appleby v. Erie County Sav. Bank, 62 N. Y. 12.

The officers of the defendant herein did institute an inquiry, and asked the bearer of the suspicious drafts test questions, which he answered according to the signature book wherein the plaintiff had placed the correct answers to the test questions. The knowledge of the correct answers to these questions was supposed to be confined to the plaintiff, and was certainly confined to the plaintiff and his own intimates. The pass book contained a rule that:

"Although the Bank will endeavor to prevent frauds and impositions, yet all the payments to persons presenting the pass books issued by it shall be valid payments to discharge the bank."

Such a rule imposes a duty upon the bank, but does not call for "its best efforts." "Ordinarily it is bound to the exercise of reasonable care and diligence, which will be a question of law or of fact, as the proofs are conclusive and undisputed, or debatable and conflicting." Allen v. Williamsburgh Sav. Bank, 69 N. Y. 314, at page 322. In the case of Ferguson v. Harlem Sav. Bank, 43 Misc. Rep. 10, at page 12, 86 N. Y. Supp. 825, at page 826, this court said:

"The testimony of the officer of the bank who made the payment shows that a few slight irregularities in the signature aroused his suspicion; that he thereupon asked all the test questions requisite for identification; that the person applying for the payment with the pass book in his possession, and claiming to be the plaintiff, correctly answered each and every one of the test questions; and that thereupon the payment was made. Under these circumstances the defendant had a right to rely upon the appearances thus presented, and to make the payment called for."

The court then held that it was the duty of the court below to direct a verdict. Under the authority of that carefully considered opinion, we are bound to affirm the direction of a verdict in this case, unless

the fact that in the one case the suspicion was aroused by "a few slight irregularities," while in the other case the suspicion was aroused by a marked dissimilarity, raises such a distinction between the cases that what was certainly a sufficient inquiry in the one case was possibly insufficient in the other. I am quite willing to concede that, where the signatures are so dissimilar that no bank officer would be deceived as to their identity, the bank has not complied with the agreement to endeavor to prevent frauds, even if it has used the test questions and answers. As a matter of law, in such a case it would be negligent to pay moneys upon a palpable forgery. I am also willing to concede that there may be cases where it is a debatable question, and therefore a question of fact for the jury, whether the dissimilarity is so palpable that no inquiry by test questions is sufficient to satisfy the requirement that the bank shall use reasonable care to prevent fraud. Nevertheless such cases are rare. "* * * The contention of the respondent that a mere difference in the signature requires the submission of the case to the jury is not supported by the authorities cited." Ferguson v. Harlem Sav. Bank, supra, 43 Misc. Rep., at page 13, 86 N. Y. Supp., at page 827.

In this case, while there is a marked difference in the signatures, there is also, it seems to me, some similarity. Conceding that the similarity in the signatures is possibly no greater than is usually apparent in the unformed handwritings of two illiterate persons, it still seems to me that the difference is also no greater than is frequently found in the handwriting of an illiterate person made at different times. The plaintiff was concededly illiterate. He had originally signed the bank's signature book only with his mark, but had thereafter learned to write his own name. His handwriting was naturally unformed, and, while the bank was put upon inquiry by the difference in the signatures on the checks, this difference might reasonably be ascribed to an improvement in the plaintiff's handwriting. It seems to me that in view of these circumstances, and in view of the paying teller's undisputed testimony that there was some similarity in the signatures, that he compared them with the signature of the plaintiff in the bank's signature book, and that, his suspicions being aroused, he asked the test questions, the conclusion that the bank reasonably complied with its agreement to "endeavor" to prevent fraud is not debatable.

The judgment and order should be affirmed, with costs.