EDWIN APPLEBY, Appellant, *v.* ERIE COUNTY SAVINGS BANK, Respondent.

*It seems,* that the rules prescribed by a savings bank for its protection in the payment of deposits, do not dispense with the exercise of ordinary care upon the part of its officers, and if, by a custom or regulation adopted by it, designed to prevent fraud, a fact is brought to the knowledge of such officers, calculated to excite suspicion and inquiry on the part of an ordinarily careful person, a failure to institute such inquiry is negligence for which the bank is liable.

The rules of defendant, a savings bank, provided in substance that although the bank would endeavor to prevent fraud upon its depositors, yet that the possession of the pass-book issued by it should be sufficient authority to warrant any payment, and that all payments to persons producing such book would be valid. It was the custom of the bank to require a signature of each depositor, at the opening of an account, in a book kept for that purpose. The book of plaintiff, a depositor, who had so signed, was stolen, and was presented to the bank by a person who signed plaintiff's name to a receipt for the amount of the deposits, and received the same. In an action to recover the amount, defendant's assistant teller, who paid the money, testified that he compared the signature to the receipt with that of plaintiff's upon the book, and was satisfied that the former was genuine. Plaintiff's evidence tended to show that the signatures were unlike, and requested to go the jury upon the question whether the failure to discover the discrepancy was not negligence; this was refused. *Held,* (FOLGER and RAPALLO, JJ., dissenting), no error; that while the bank was not absolutely discharged by a payment upon production of the pass-book, irrespective of the exercise of ordinary care in the examination of the signatures, yet to be evidence of negligence, the dissimilarity must be so marked and apparent that it would be readily discovered by a person competent to hold the position of teller, not one as to which competent persons might

honestly differ, and that it did not appear, affirmatively, that the discrepancy was of such a character.

(Argued April 12, 1875; decided April 30, 1875.)

APPEAL from judgment of the General Term of the Superior Court of Buffalo, in favor of defendant, entered upon an order denying a motion for a new trial, and directing a judgment upon a verdict.

This action was brought to recover the amount of various deposits made by plaintiff with defendant. The defence was, that the amount had been paid by defendant in good faith to a person holding the pass-book issued to plaintiff by defendant, and supposed by it to be the plaintiff.

It appeared upon the trial that in pursuance of the provisions of its charter, before the deposits in question, defendant's board of trustees adopted the following among other by-laws:

"All deposits and all payments shall be entered, at the time they are made, in the books of the bank, and also on the pass-book of the depositor, who shall examine the same. The pass-book shall be the voucher of the depositor, and the possession of the pass-book shall be sufficient authority to the bank to warrant any payment made and entered in it; and the bank shall not be liable or called on to make any payments without the presenting of the pass-book at its counter, that the proper entry may be made in it."

"12. All drafts for one dollar and over must be made personally, or by order in writing, duly authenticated, where the signature is not known to the officers of the bank, and must be accompanied by the pass-book.

"17. Although the bank will endeavor to prevent fraud upon its depositors, yet all payments to persons producing the pass-books issued by the bank shall be valid payment to discharge the bank. In the case of lost books, the bank will decide as to the person to whom payment shall be made, without the right of depositor in such lost book to question the correctness of the payment."

In the pass-book delivered to the plaintiff, upon his making his first deposit, was contained a copy of the by-laws, and evidence was given tending to show that plaintiff read the same at the time. A person appeared at the bank having plaintiff's book, which he presented, and called for the amount of the deposits, and upon his signing a receipt in the name of the plaintiff, it was paid over to him, and entered in the pass-book, the assistant teller, who paid the same, supposing he was the person entitled thereto.

It was also proved that the bank keeps a signature book containing said by-laws, in which it requires such of the depositors as can write to sign their names when they make their first deposit, and that plaintiff signed his name therein when he made his first deposit. In respect to the particulars of the payment, the assistant teller testified: " On the 23d of April, 1873, Appleby presented his pass-book at the bank and said he wished to draw his balance; I then took his bank-book and compared it with his account in the ledger, after which I filled up a blank check and asked him to sign it; Mr. Appleby signed it there; he did not copy it from any thing, but he took it to a counter opposite to mine, and signed it there; I compared the signature on the check with the signature in the signature book, which is a book in which parties write their names when they make their first deposit; his signature is number 48,259; it was in the line of my ordinary duty to make payments in this way; I examined the signature book carefully for the purpose of seeing whether it was genuine, and satisfied myself that it was; after examining the signature I paid the money for which the check was drawn."

The plaintiff gave evidence tending to show that he was not the man to whom such payment was made, but that the signature to the check of the twenty-third of April was a forgery,. that his book had been stolen and the money obtained by another person, one Clarkson; that he never signed the receipt, and that the signature to the receipt given upon obtaining the money was unlike plaintiff's signature; the

witnesses pointing out alleged differences in several of the letters, and that the plaintiff makes a better signature than the one made to the receipt. The plaintiff gave further evidence tending to show that the plaintiff never read all the by-laws of the defendant, and did not know prior to the loss of the money that there was a by-law which provided that the bank might pay the deposits to any one who might present the bank book. That immediately after missing his pass-book he gave notice to the bank of its loss. That a man of the name of Clarkson, who was his room mate, was familiar with plaintiff's signature, and knew the style of plaintiff's key to his trunk.

The court directed a verdict for defendant, which was accordingly rendered. Exceptions were ordered to be heard at first instance at General Term.

*Wm. H. Gurney* for the appellant. The by-laws of a savings bank must be reasonable and must be brought to the knowledge of persons dealing with it, or they are not bound by them. (*Seneca Co. Bk.* v. *Lamb,* 26 Barb., 595, 598 ; *M. and F. Bk. of Albany* v. *Smith,* 19 J. R., 115 ; Smith on Banking, 389 ; A. & A. on Corp., §§ 357–359 ; *N. Y. and N. H. R. R. Co.* v. *Schuyler,* 38 Barb., 535 ; *Warhus* v. *Bowery Svgs. Bk.,* 5 Duer, 67 ; affirmed, 21 N. Y., 543.) A bank is bound to know the signature of its depositors ; and the fact that it has a large number of depositors does not excuse it in paying upon a forged check. ( *Weisser's Admrs.* v. *Prest. N. R. Bk.,* 10 N. Y., 68 ; *Morgan* v. *Bk. of State of N. Y.,* 11 id., 404 ; *Nat. Park Bk.* v. *Ninth Nat. Bk.,* 46 id., 77.) The by-laws do not amount to a contract between the depositor and the bank. (*Schoenwald* v. *Met. Svgs. Bk.,* 1 J. & S., 440 ; *Kelly* v. *Em. Indust. Svgs. Bk.,* 2 Daly, 227 ; *Ewes* v. *People's Svgs. Bk.,* 27 Conn., 229 ; *Ramaley* v. *Leland,* 6 Robt., 358 ; *Kerkman* v. *Showcross,* 6 T. R., 17 ; *Cole* v. *Goodwin,* 19 Wend., 269 ; *Blossom* v. *Dodd,* 43 N. Y., 264 ; *Rawson* v. *Penn. R. R. Co.,* 48 id., 212 ; *Limburger* v. *Westcott,* 49 Barb., 283 ; *Westcott* v.

*Fargo, Prest.*, etc., 63 id., 349; *Grace* v. *Adams*, 100 Mass., 560.) A carrier or bailee can, in no event, limit his liability for fraud or gross negligence. (*Guillamire* v. *Ham. and A. P. Co.*, 42 N. Y., 212; 51 id., 170.) A larcenous taking of chattels does not divest the owner of them, nor can the thief transfer to even a *bona fide* purchaser any title thereto. (*Bassett* v. *Spofford*, 45 N. Y., 387.)

*E. C. Sprague* for the respondent. The depositor having received his bank-book with the by-laws printed therein, is presumed to know their contents and impliedly contracts to make his deposits according to their terms. (*Warhus* v. *Bowery Svgs. Bk.*, 21 N. Y., 543; *Ewes* v. *People's Svgs. Bk.*, 46 N. H., 78; *Stone* v. *Clough*, 41 id., 296; *Kelley* v. *Em. Indust. Svgs. Bk.*, 2 Daly, 127; *Freeman* v. *Boynton*, 7 Mass., 486; *White* v. *Bank*, 22 Pick., 183; *Wallace* v. *Bank*, 7 Gray, 137.) The evidence did not justify a finding that defendant had been guilty of a want of care. (*Schoenwald* v. *Met. Svgs. Bk.*, Com. App.) Irrespective of any by-laws defendant would be protected by a payment made in good faith to the holder of the pass-book. (*Sullivan* v. *Lewiston Inst.*, 56 Me., 507; *Ewes* v. *People's Svgs. Bk.*, 27 Conn., 234; *Heath* v. *Portsmouth Svgs. Bk.*, 46 N. H., 78; *Camp's Appeal*, 4 Am. R., 39; 36 Conn., 88; *Tillinghast* v. *Wheaton*, 5 Am. R., 621.)

CHURCH, Ch. J. The only point upon which I have entertained any doubt in this case, is upon the question whether the teller was negligent in not observing the dissimilarity between the signature upon the receipt upon which the money was paid, and the signature of the plaintiff upon the book when the first deposit was made, should not have been submitted to the jury. Rule 9 provides, that the pass-book shall be the voucher of the depositor, " and the possession of the pass-book shall be sufficient authority to the bank to warrant any payment made in it." Rule 12. " All payments of one dollar, or over, must be made person-

ally, or by order in writing,  *  *  *  and must be accompanied by the pass-book." Rule 17. " Although the bank will endeavor to prevent fraud upon its depositors, yet all payments to persons producing the pass-books issued by the bank shall be valid payments to discharge the bank." For the purposes of this case under the ruling of the court directing a verdict for the defendant, it must be assumed that the money was paid to a person other than the plaintiff, who had stolen the pass-book from the plaintiff. It appears that the bank was in the habit of requiring the signature of each depositor, upon a book which it kept, when the first deposit was made, and that the plaintiff had signed such book. The assistant teller, who paid the money, testified that the person who drew it signed a receipt, and that he compared the signature upon the receipt with the signature of the plaintiff upon the book, and was satisfied that the former was genuine. Evidence was given on the part of the plaintiff tending to prove that the signature to the receipt was unlike that of the plaintiff's on the book, that the latter was a better signature, and that some of the letters were unlike, and he requested to go to the jury upon the question whether the failure to discover the discrepancy was not negligence, which was refused. We have not been furnished with the grounds of the refusal. If it was upon the ground that the bank was absolutely discharged by a payment upon the production of the pass-book, irrespective of the exercise of ordinary care and diligence upon the part of the teller, in not discovering the dissimilarity in the signatures and instituting further inquiry, it would be error. It is necessary and proper that rules and regulations should be prescribed for the payment of money deposited in savings banks, and for the protection of the banks in making payments, and if such rules are within the restrictions of the act, and are reasonable, they should be upheld. They constitute, if properly communicated and assented to by the depositor, the contract between the parties. But these rules do not dispense with the exercise of ordinary care on the part of the officers of the bank.

If, by a regulation designed to prevent fraud upon depositors, which by the rules the bank promised to "endeavor" to do, a fact or circumstance is brought to the knowledge of the officers, which is calculated to, and ought to excite the suspicion and inquiry of an ordinarily careful person, it is clearly the duty of the officers to institute such inquiry, and a failure to do so is negligence for which the bank would be liable, and such, I understand, is the doctrine of the cases cited by the defendant. The officers of these institutions are held to the exercise of reasonable care and diligence. (56 Me., 507; 27 Conn., 229; 46 N. H., 78.) In this case if the two signatures were so dissimilar as when compared the discrepancy would be easily and readily discovered by a person competent for the position, then the failure to discover it would be evidence of negligence which should have been passed upon by the jury. It would not be evidence of negligence if the difference was not marked and apparent, or if it would require a critical examination to detect it, and especially if the discrepancy was one as to which competent persons might honestly differ in opinion.

The plaintiff is the appellant and must establish that an error was committed on the trial, and the difficulty is that it does not appear affirmatively that the difference in the signature was so manifest as to require the question to be submitted under the foregoing views. There was no direct evidence that it was of that character, and we cannot have, as the court below had, the benefit of a personal inspection. The difference in certain letters may not have been such as to indicate a different handwriting, and the same remark is applicable to evidence that one was better than the other. We have no means of determining but that the court decided that the dissimilarity was of such a character that negligence could not, within the views above expressed, be predicated upon a failure to discover it, and such a decision would not be erroneous in law. The tendency of the evidence is in that direction. We do not think the objections urged to the validity of the rules applicable to this case, can be sustained.

The judgment must be affirmed.

All concur; except FOLGER and RAPALLO, JJ., dissenting.

Judgment affirmed.