### KELLEY v. BUFFALO SAV. BANK.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1903.)

**1. SAVINGS BANKS—BY-LAWS—PAYMENT OF DEPOSITS.**
  Where the by-laws of a savings bank provided that the secretary would endeavor to prevent frauds, but that all payments made to persons presenting the deposit books should be valid payments to the depositors, respectively, payments made by the bank to relatives of a deceased depositor, who had been in possession of the depositor's pass book for some time, who had occasionally made deposits to the credit of the account, and had had interest credited in the book from time to time, and whose

signature resembled that of the depositor so closely that the bank was not guilty of negligence in failing to observe the difference, relieved the bank from further liability.

2. SAME—SIGNATURES—EVIDENCE.
   In an action against a savings bank to recover deposits, in which defendant alleged that it had paid the deposits after the depositor's death to her mother and sister, who had possession of the pass book and signed orders for the money, evidence considered, and *held* to show that the bank was not negligent in failing to observe the difference between the signature of the depositor and that of the person drawing the money.

Appeal from Trial Term, Erie County.

Action by Mary Kelley, as administrator of Ellen Neville, against the Buffalo Savings Bank. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Harry D. Williams, for appellant.

Adolph Rebadow and Charles D. Marshall, for respondent.

WILLIAMS, J. The judgment should be affirmed, with costs. The action was brought to recover moneys deposited in defendant's savings bank by and in the name of plaintiff's intestate. The defense was that the moneys had all been withdrawn from the bank after the death of the intestate, but under circumstances which relieved the defendant from liability therefor. The trial was commenced before the court and a jury, but at the close of the evidence the parties stipulated that the jury should be discharged and the case submitted to the court for determination. The court thereafter decided the case, making findings of fact and of law. The case should therefore be regarded as tried before the court, a jury having been waived.

The facts found by the court are uncontroverted, except in a few respects, which will be indicated. The deceased, January 13, 1871, opened the account in question, when she was 18 or 19 years old. The ordinary pass book was issued to her. She died about December 1, 1878. During her lifetime she personally presented the pass book at the bank 16 times and had deposits entered therein, and 15 other times had had credits of interest entered therein. She presented the pass book twice and drew moneys from the account, signed the orders therefor, and had the same entered upon the pass book, viz.: September 22, 1873, $335.98, and July 7, 1877, $23.31. At the time of her death she had a balance to her credit of $884.43. She had a mother and two sisters, Kate and Mary, and apparently they all lived together. When she died the pass book was in the house, and came into the possession of the mother and sisters, or some of them. After the death of deceased, some of these three persons presented the pass book at the bank, and had semiannual credits of interest entered therein, in January and July of each year, to and including July, 1883, and on March 4, 1882, deposited to the credit of the account, and had entered in the pass book, $70. After the death of deceased some of these three persons presented the pass book at the bank and drew from the account, signed the orders therefor, and had the same entered upon the pass book, five different amounts,

viz.: December 28, 1878, $41.43; June 2, 1880, $50.00; July 30, 1881, $70.45; August 14, 1883, $56.62; and Sept. 1, 1883, $937, the balance of the account. The name signed to each of these orders was that of the deceased, and the person signing each order was not the personal representative of deceased. The defendant never knew of the death of deceased until many years after all the above moneys had been drawn. The mother and sister Kate became inmates of an asylum for the aged and infirm about 1895, paying at the time they entered $1,000. The mother died about 1900 and sister Kate about 1901. Mary, the other sister, is the only member of the family surviving. She was married in 1888, and is the administratrix, who brings this action. The court found that by a critical examination and comparison of the signatures to the five forged orders with the signature of the deceased on the bank signature book, it would have been apparent to a competent bank officer that the five signatures were forged; that, when the orders were presented, the defendant made no critical examination or comparison of the forged signatures with the signature in the book, and that there did not exist such a difference between the five forged signatures and the signature in the book as to create doubt as to the genuineness of the five forged signatures in the mind of a competent and reasonably careful bank officer, when presented by a person unknown to him with the pass book; and therefore the defendant exercised due care and caution, and was not guilty of negligence in paying any of the moneys on the five forged orders.

The signatures to the seven orders for money, two genuine and five forged, and the signature in the bank book are before us, and upon an examination thereof we should say that such a similarity exists in all of them as to mislead ordinary persons, if not competent bank officers or handwriting experts. No objection can reasonably be made by the plaintiff to the findings upon this subject above referred to, unless it be the last one, which may be regarded as a conclusion of fact—that the defendant exercised due care, and was not guilty of negligence, in paying the money on the five forged orders. The parties were bound by and are subject to the provision of section 21 of the by-laws of defendant, viz.:

"The secretary will endeavor to prevent frauds, but all payments made to persons presenting the deposit books, or duplicates thereof, shall be good and valid payments to the depositors, respectively."

The defendant claims that under the evidence in this case it was protected by this by-law, and is not liable for the moneys so paid to the personal representative of the deceased. The mother and the two sisters were the only persons apparently interested in the amount of the deposit. After the death of deceased they had the pass book, and knew the money was on deposit with the defendant, and the amount of it. They gave the defendant no information as to the death; but from the death, in 1878, until 1883, a period of five years, some one or more of them continued to make deposits in the name of the deceased, and to have the accrued interest credited up on the pass book, and to draw moneys from the account in the name of the deceased, until the whole amount of the money was drawn out. They

imitated very closely the signature of the deceased in making the orders for the withdrawal of the moneys, so that the defendant never suspected it was dealing with persons other than the deceased herself. The money having been wholly withdrawn in 1883, the matter was allowed to rest until 1901, a period of 18 years, before a personal representative of the deceased was appointed, a demand made for the moneys, and this action commenced. The mother and sister Kate had then recently died, in 1900 and 1901. It must be apparent that the family had the benefit of the moneys on deposit when the deceased died, and we can hardly believe that the plaintiff was ignorant of the withdrawal and use of the moneys. The court found that the moneys were withdrawn by the mother, or one of the two sisters. It was not found that the withdrawal was with the knowledge and consent of the sister who is now the personal representative of the deceased, and the owner of the whole claim, if any, against the defendant, and who brings this action. The defendant is by the decision relieved from liability upon the ground that in paying out the moneys it acted with care and was guilty of no negligence, and therefore under by-law 21 the payments were good and valid as against the deceased and her personal representative.

The law governing the disposition of this case was laid down by the Court of Appeals many years ago, and has always since been adhered to by that court, viz.: Rules and regulations may be prescribed by savings banks for the payment of money deposited in such banks, and for their protection in making such payments. These rules and regulations, when communicated to, and assented to by, depositors, constitute the contract between the parties. They do not, however, dispense with the exercise of ordinary care and diligence on the part of the bank officials, when they provide that the banks will endeavor to prevent frauds. When facts and circumstances are brought to the knowledge of the banks at the time payments are made, which are calculated to, and ought to, excite the suspicion and inquiry of ordinarily careful bank officials, it is the duty to institute such inquiry; and a failure to do so constitutes negligence, and deprives the banks of protection in making such payments. When the signatures to orders for the money are so unlike the signature in the bank book that the dissimilarity is readily and easily discernible by competent bank officials, then the failure to so discern it is evidence of negligence on the part of the banks; but it is not such evidence when the differences in the signatures are not marked or apparent, and it would require a critical examination and comparison by such officials to detect it. Appleby v. Erie Co. Sav. Bk., 62 N. Y. 12; Allen v. Williamsburgh Sav. Bk., 69 N. Y. 314; People v. Third Ave. Sav. Bk., 98 N. Y. 661; Kummel v. Germania Sav. Bk., 127 N. Y. 488, 28 N. E. 398, 13 L. R. A. 786; Gearns v. Bowery Sav. Bk., 135 N. Y. 557, 32 N. E. 249.

Within these principles of law, and in view of the specific findings of fact made by the court, the finding of the conclusion of fact that the bank acted with care and was not guilty of any negligence, and the payments were therefore good and valid against the deceased and her personal representative, was, we think, properly made. The only

facts or circumstances that suggest negligence and want of care are connected with the signatures and their dissimilarity, and the findings of fact on this subject relieve the defendant from any claim of such negligence.

We conclude that the judgment should be affirmed, with costs. All concur.