### MIERKE v. JEFFERSON COUNTY SAVINGS BANK.

(Supreme Court, Trial Term, Jefferson County. June 5, 1911.)

1. MONEY RECEIVED (§ 10*)—EXPRESS CONTRACT—RECOVERY OF DEPOSIT—LOST PASS BOOK.

Where the by-laws of a savings bank required the production of a depositor's pass book in order to withdraw a deposit, plaintiff's administrator could not maintain an action for money had and received on his being unable to produce the pass book because of its loss, but should sue on the contract, and allege the loss of the pass book, and his inability to produce the same.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. §§ 32, 33; Dec. Dig. § 10.*]

2. BANKS AND BANKING (§ 306*)—SAVINGS BANKS—RECOVERY OF DEPOSIT—NOTICE.

A by-law of a savings bank providing that the bank would pay all deposits on demand, but reserved the right to require 90 days notice of withdrawals, to protect the bank and its depositors in time of public excitement, and that no suit should be taken by any depositor to enforce payment until the expiration of such 90 days, related solely to a time of public distress, and, in the absence of such condition, a suit brought within 90 days after demand was not premature, in the absence of any showing that the bank required such notice when payment was demanded.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1165, 1169, 1183–1188; Dec. Dig. § 306.*]

3. BANKS AND BANKING (§ 306*)—SAVINGS BANKS—LOSS OF PASS BOOK—NOTICE TO BANK.

A savings bank by-law that in case of loss of a depositor's pass book immediate written notice should be given the bank that payment might

be stopped was not a condition precedent to the depositor's right to sue to recover the deposit.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1165, 1169, 1183–1188; Dec. Dig. § 306.*]

4. BANKS AND BANKING (§ 306*)—SAVINGS BANKS—PASS BOOK—LOSS—PROOF.

Where the administrator of a savings bank depositor applied for payment of the deposit, but failed to produce the depositor's pass book, the bank was not bound to make payment on the administrator's bare statement that the book was lost, but was entitled, in the absence of a by-law covering the matter, to be furnished with such proof of loss as would convince an ordinarily prudent man.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1165, 1169, 1183–1188; Dec. Dig. § 306.*]

5. BANKS AND BANKING (§ 305*)—SAVINGS BANKS—PAYMENT OF DEPOSIT—LOSS OF PASS BOOK—INDEMNITY.

Where a pass book of a savings bank depositor is lost, the depositor's administrator was not bound to furnish the bank security as a condition to payment of the fund.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1177–1182; Dec. Dig. § 305.*]

Action by Henry J. Mierke, as administrator of the estate of Minnie Mierke, deceased, against the Jefferson County Savings Bank. Complaint dismissed.

Clarence L. Crabb, for plaintiff.
Samuel Child, for defendant.

MERRELL, J.   This action is brought to recover moneys on deposit with the defendant, a savings institution duly incorporated under the laws of the state of New York. Upon the trial a jury was waived, and the case tried and submitted to the court.

The material facts are as follows:

On or about January 9, 1908, one Wilhelmina Mierke, the wife of the plaintiff, opened an account with the defendant, making at that time a substantial deposit with defendant and signing the usual signature card and receiving a pass book containing defendant's by-laws, and in which was entered the amount of her deposit.

Wilhelmina Mierke died intestate at Watertown, N. Y., where she then resided, on November 29, 1910. Thereafter, and on the 6th day of January, 1911, such proceedings were had in Surrogate's Court of Jefferson county whereby the plaintiff was appointed administrator of the goods, chattels, and credits of Minnie Mierke, deceased, and upon the same day plaintiff qualified as such administrator, and, armed with the certificate of the surrogate of Jefferson county showing his authority, applied to the defendant for a transfer of said savings account to him as such administrator. The officials of the bank declined to make the transfer for the reason that the account was not in the name of Minnie Mierke, but Wilhelmina Mierke. Plaintiff then, asserting that Wilhelmina Mierke and Minnie Mierke were one and the same person, procured amendment of the proceedings in Surrogate's Court so that his appointment should be as administrator of Wilhelmina or Minnie Mierke, deceased, and on January 7, 1911, presented the bank with

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the amended certificate of the surrogate showing his authority to obtain control of said savings account. The account, at this time, with accrued interest, amounted to $966.54. ·

At the time of plaintiff's first appearance at the bank, he was further advised by the bank officials that he must obtain from the State Comptroller his consent to the transfer and a waiver of notice thereof. Accordingly, plaintiff procured such consent and waiver and presented the same to defendant on January 11, 1911. Plaintiff did not, at the time of demanding the transfer of said account, present the pass book which was issued to his intestate, and as an excuse for his failure to produce it stated to the bank officials that he could not find it. The defendant then refused to make the transfer or pay the amount of the account to plaintiff, unless he would give a bond to defendant to indemnify it from loss. Plaintiff refused to give the required bond, and brings this action to recover of defendant the amount so on deposit, as for money had and received. In plaintiff's complaint no allusion is made to the pass book issued to plaintiff's intestate or its subsequent loss, plaintiff relying entirely upon the conventional relation of debtor and creditor between the parties and suing for money had and received. I am of the opinion that plaintiff cannot maintain his action in the form attempted, and that the transactions between the parties are governed by the state banking law and the authorized rules and regulations adopted by defendant. .

The provisions of statute which are pertinent are contained in sections 143 and 152 of the Banking Law, being chapter 2 of the Consolidated Laws. Section 143 of the Banking Law, so far as applicable, provides:

"Repayment of deposits; regulations; limitations. The sums deposited with any savings bank, together with any dividends or interest credited thereto, shall be repaid to such depositors respectively, or to their legal representatives, after demand, in such manner, and at such times, and after such previous notice, and under such regulations as the board of trustees shall prescribe. Such regulations shall be posted in a conspicuous place in the room where the business of the corporation shall be transacted, and shall be printed in the pass books or other evidences of deposit furnished by it, and shall be evidence between the corporation and the depositors holding the same of the terms upon which the deposits therein acknowledged are made."

Section 152 of the Banking Law, entitled, "Restrictions on Methods of Doing Business," reads, in part, as follows:

"No savings bank shall make or issue any certificate of deposit payable either on demand or at a fixed day, or pay any interest, except regular quarterly or semi-annual dividends upon any deposits or balances, or pay any interest or deposit or portion of a deposit, or any check drawn upon itself by a depositor *unless the pass book of the depositor be produced* and the proper entry be made therein at the time of the transaction. The board of trustees may, by their by-laws, provide for making payments in cases of loss of pass book or other exceptional cases where the pass book cannot be produced without loss or serious inconvenience to depositors, the right to make such payments to cease when so directed by the superintendent of banks upon his being satisfied that such right is being improperly exercised by any savings bank; but payments may be made upon the judgment or order of a court or the power of attorney of a depositor."

Pursuant to the powers conferred by statute, the defendant adopted certain rules and by-laws governing deposits and withdrawals and

which were printed in the pass book delivered to plaintiff's intestate, who, as before stated, signed the usual signature card provided for in section 10 of defendant's by-laws, agreeing thereto, and there seems to be no question but that she became bound by the regulations and by-laws of defendant.

Sections 14, 16, 17, and 18 of the by-laws are relevant here, and provide as follows:

"Sec. 14. This bank will, as a rule, pay all deposits on demand, yet it reserves the right to require ninety days notice at its office of intention to withdraw deposits; the intent of this rule being solely to protect the bank and its depositors in times of public excitement and danger, and no suit or other proceedings in any case shall be taken by any depositor to enforce payment until the expiration of said ninety days."

"Sec. 16. All moneys deposited or withdrawn shall be entered at the time in the books of the bank, and a pass book shall be given to each depositor, in which the sum deposited or withdrawn shall be entered, and no assignment or transfer of such book or of the money therein entered shall be made to any other person without consent of the treasurer.

"Sec. 17. Dividends and deposits shall only be drawn by the depositor in person or upon the written order of such depositor, and if required, such order shall be duly verified and the holder thereof identified to the satisfaction of the officers of the bank. *But no money can be withdrawn or deposited except on production of the pass book*, and each depositor must sign a receipt for all moneys withdrawn. And whatever time money may be drawn out interest will only be allowed up to the then last interest day.

"Sec. 18. The treasurer will endeavor at all times to prevent fraud, yet all payments made to any person producing a pass book of this bank, or who shall produce an order for the payment of money accompanied with such pass book purporting to have been signed by the person to whom such book was issued, shall be deemed to be as good and effectual a payment to discharge the bank as though made to the owner of such pass book. In case a pass book shall be lost immediate notice shall be given to the bank, *in writing*, when payment upon such book will be stopped."

The defendant seeks to justify its refusal to transfer the account to plaintiff upon the following several grounds: First, that the identity of plaintiff's intestate is in doubt; second, that plaintiff's action is improper in form, and that, under the complaint, the loss of the pass book could not be properly proven as an excuse for its nonproduction in accordance with the requirements of section 18 of defendant's by-laws; third, that the relations of the parties were governed by the provisions of the Banking Law and defendant's by-laws, above quoted, and that under section 14 of said by-laws the defendant is entitled to 90 days written notice by the depositor of intention to withdraw the deposit, and that 90 days must elapse after such written notice before any suit or other proceeding is brought to enforce payment; and, fourth, that by statute and under said section 17 of defendant's by-laws the production of the pass book was a condition precedent to the right of transfer or payment, and, even were the allegations of plaintiff's complaint adequate to permit of the introduction of the necessary proofs, the plaintiff failed upon the trial to show that he had at the time of demanding of defendant the transfer of the account furnished any sufficient evidence of the loss that would have justified defendant in acceding to his demands.

Considering these several issues raised by defendant in the order stated, as to the identity of plaintiff's intestate, I think the evidence

fully justifies me in finding that the Wilhelmina Mierke, who made the deposit in question, and to whom said pass book was issued, was plaintiff's intestate, and was the same person as Minnie Mierke, and that defendant was sufficiently advised thereof.

[1] As to the form of plaintiff's action, I think defendant's objections well taken. The production of the pass book was under defendant's by-law 17 a condition precedent to the withdrawal of the deposit, and if the book was lost plaintiff should have alleged such loss, and that proper proof of the loss was furnished defendant at the time payment was asked and prior to the commencement of the action. Had the complaint alleged the loss of the pass book, and that sufficient proof of such loss had been furnished defendant at the time the transfer or withdrawal was demanded and before the commencement of the action, plaintiff would have then been in a position to present his proofs, and, if such proofs had sustained his allegations, the refusal of defendant to pay would have been arbitrary and unreasonable, and plaintiff would have been entitled to recover. Warhus v. Bowery Savings Bank, 21 N. Y. 543. The complaint is lacking in these necessary allegations which would justify the reception of such proofs as were offered by plaintiff upon the trial as to the loss of the pass book and the proving of such loss to defendant as an excuse for its nonproduction. The complaint fails to state the facts constituting the cause of action relied upon by the plaintiff on the trial.

[2] I am unable to agree with defendant's contention that the action is prematurely brought for the reason that the 90 days notice of intention to withdraw the deposit was not given, as provided by section 14 of defendant's by-laws. First. It does not appear that defendant ever required the notice, as it should have done promptly when payment was demanded, specifying that as its excuse for nonpayment. Abramowitz v. Citizens' Savings Bank, 17 Misc. Rep. 297, 40 N. Y. Supp. 385. Secondly. Section 14 expressly states that the intent of such rule is to protect the bank and its depositors in times of public excitement and danger, and the prohibition as to bringing suit to enforce payment before the expiration of "said ninety days" unquestionably relates to a time of public distress, when the invocation of such a rule is entirely reasonable for the protection of the institution and its depositors.

[3] Section 18 of defendant's by-laws provides that, in case of loss of a pass book, immediate notice shall be given to the bank, in writing, when payment upon such book will be stopped. While I do not think this provision as to written notice is a condition precedent to the bringing of this action and was merely to protect the account, yet plaintiff's failure to give such notice could not have been without significance to defendant when it was later called upon to pay the deposit, and the loss only proven by plaintiff's bare statement that he could not find the pass book in its usual place or among decedent's effects.

[4] As to defendant's contention that plaintiff failed to show that sufficient proof of loss of the pass book was furnished defendant when the transfer of the account was demanded by plaintiff, it seems to me that, even assuming that plaintiff's pleading was good, the evidence failed to disclose that plaintiff, before bringing his action, had fur-

nished defendant with any sufficient proof upon which defendant could safely rely, and which would alone justify it in turning over the fund. Was the defendant bound to take plaintiff's bare statement of loss as true without such further proof by affidavit or otherwise as would convince a reasonably prudent man of the loss? I think not. What evidence had defendant that the book had not been assigned to some one or given away by the depositor in anticipation of death? A savings bank must use at least ordinary care in the payment of accounts. Appleby v. Erie Co. Savings Bank, 62 N. Y. 12; Allen v. Williamsburgh Savings Bank, 69 N. Y. 314; Mahan v. South Brooklyn Savings Inst., 175 N. Y. 69, 67 N. E. 118, 96 Am. St. Rep. 603; Kelley v. Buffalo Savings Bank, 180 N. Y. 171, 72 N. E. 995, 69 L. R. A. 317, 105 Am. St. Rep. 720. While the statute permits savings banks to adopt proper rules for the payment of deposits where passbooks are lost, this defendant does not seem to have ever adopted any rules governing such a contingency.

[5] Undoubtedly the plaintiff was in no wise bound to adopt the defendant's suggestion as to indemnity. The suggestion was evidently made by defendant with a view of affording the plaintiff a means of obtaining control of the fund without serious hardship. I do not think the condition so imposed by defendant was unreasonable under the circumstances.

The statute and the by-laws of the savings bank both provide that no payment shall be made to a depositor or his assignee, except on the production of the pass book representing the deposit. It must, however, be assumed that pass books occasionally are lost or destroyed, and in such cases the courts cannot allow the provisions of the statute and by-laws relating to the presentation of pass books to be used as an instrument of fraud. Defendant should be required to pay the deposit in question when plaintiff has performed all the acts which could reasonably be required of him, and has, prior to the commencement of the action, furnished the defendant with such evidence showing his inability to comply with the requirement to produce the pass book as would convince an ordinarily prudent man of its loss. As the original depositor is dead, such proof is more difficult to produce, and the bank is at the same time called upon to exercise a greater degree of caution. Having been informed of the loss, the bank was put upon inquiry.

I do not think that the proof which plaintiff tendered defendant was enough to excuse his failure to produce the book or to justify defendant in releasing the fund.

I therefore am of the opinion that the action was prematurely brought, and that the defendant was, under all the circumstances, fully justified in refusing payment to plaintiff.

The plaintiff's complaint should be dismissed, with costs.