(93 Misc. Rep. 166)

## SCHNEIDER v. UNION DIME SAVINGS BANK.

(Supreme Court, Appellate Term, First Department. January 7, 1916.)

1. BANKS AND BANKING ⊂⊃301—SAVINGS BANK—PAYMENT OF DEPOSIT—
   DUTY OF CARE.

   Though the by-laws of a savings bank declared that all payments made to a person presenting a deposit book should be deemed made to the depositor, whether or not they had authority to withdraw the money, the savings bank is bound to exercise ordinary care to safeguard its depositors from payments made to persons unauthorized to receive them, though they present the deposit book.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1159, 1162–1164, 1166–1168, 1172–1176; Dec. Dig. ⊂⊃301.]

2. BANKS AND BANKING ⊂⊃301—SAVINGS BANK—PAYMENT OF DEPOSITS—
   CARE.

   Where the signature on an order presented by one who had possession of the depositor's savings bank passbook was such that one experienced in comparing handwriting would see it was not written in the same hand as the depositor's signature on file, a savings bank is negligent in making payment.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1159, 1162–1164, 1166–1168, 1172–1176; Dec. Dig. ⊂⊃301.]

Appeal from City Court of New York, Trial Term.

Action by Joseph Schneider against the Union Dime Savings Bank. From a judgment for plaintiff and an order denying new trial, defendant appeals. Affirmed.

Argued November term, 1915, before LEHMAN, BIJUR, and FINCH, JJ.

Woodford, Bovee & Butcher, of New York City (James N. Luttrell, of New York City, of counsel), for appellant.

Lowther, Smith & Russell, of New York City (James Wheatland Smith, of New York City, of counsel), for respondent.

FINCH, J. This is an action by a depositor to recover from a savings bank a balance alleged to be still held on deposit. It appears from the evidence that before the bringing of this action the bank had paid $500 to a person presenting plaintiff's bank book and an order forged in his name. The bank charged plaintiff's account with this sum, and claims it should not be obliged to pay it again. The order on which payment was made was a forgery, and the only question which needs to be considered here is whether the bank was protected in making the payment.

[1] The by-laws of the bank contain the usual regulation, which plaintiff was bound by, to the effect that all payments made to a person presenting a deposit book should be deemed to be made to the depositor, whether or not the latter gave that person authority to withdraw the money. The rule of law is well settled, however, that notwithstanding such a regulation the savings bank is bound to exercise ordinary care to safeguard its depositors from payments made to persons irregularly applying therefor, even though they present the

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

depositors' passbook. Appleby v. Erie Savings Bank, 62 N. Y. 12; Kummel v. Germania Savings Bank, 127 N. Y. 488, 28 N. E. 398, 13 L. R. A. 786; Kelley v. Buffalo Savings Bank, 180 N. Y. 171, 72 N. E. 995, 69 L. R. A. 317, 105 Am. St. Rep. 720. The question to be decided in this case is whether the defendant's employés exercised ordinary care in failing to detect the fact that the order on which the $500 was paid was a forgery.

[2] The order itself and the original signature card which plaintiff signed on opening the account are before the court, and the difference between the two signatures is such as to be apparent to a man experienced in comparing handwriting. While there is a certain similarity in the form of the letters, it takes no expert to recognize the great difference in the fluency with which they were written. On even a casual observation, the genuine signature discloses some skill and speed in writing, while the forgery appears like the labored product of a hand unaccustomed to the pen. Certainly the dissimilarity is sufficient to be apparent so as to put on his guard a person competent to hold the position of paying teller in a savings bank.

Moreover, plaintiff's expert, in addition to the reason quoted in the opinion of Mr. Justice LEHMAN holding that the signature to the order was a forgery, gave as reasons upon which the court was fully warranted in basing its judgment the following:

"Then, when you take the standard signature, however, you find that the handwriting in the standards slants to the right of vertical, whereas the disputed signature is almost vertical; it is not quite vertical; but in the standards there is a decided slant to the right of vertical, and you find it is made with a fair degree of speed and without this patching process. There are a number of pen lifts in the genuine writings, and the disputed signature has those pen lifts and has seven or eight additional pen lifts that we do not find in the genuine signatures."

At the close of the trial, both parties having moved for a direction of a verdict, the court granted plaintiff's motion, and the judgment entered thereon should be affirmed, with costs.

BIJUR, J., concurs.

LEHMAN, J. (concurring in part). The plaintiff on November 3, 1913, presented to the bank his deposit book and a draft for $822.64. The defendant refused to pay the draft, claiming that the plaintiff did not have that amount on deposit because on June 16th the bank had paid out $500, to some person presenting the plaintiff's bank book and an order for the sum of $500, which purported to be signed by the plaintiff.

For the purposes of this appeal, we must assume that the bank book was stolen from the plaintiff's possession and plaintiff's name signed to the order. It appears further that the by-laws of the bank contain a regulation that:

"Depositors alone shall be responsible for the safeguarding of their books. And all payments made to persons producing the deposit books whether with or without an order or letter of attorney, purporting to be signed by the

depositor shall be deemed good and valid payment to depositors respectively and shall fully discharge the bank therefrom."

The plaintiff assented to this regulation and is bound thereby. In the case of Appleby v. Erie County Savings Bank, 62 N. Y. 12, the court stated:

"It is necessary and proper that rules and regulations shall be prescribed for the payment of money deposited in savings banks, and for the protection of the banks in making payments, and if such rules are within the restrictions of the act, and are reasonable, they should be upheld. They constitute, if properly communicated and assented to by the depositor, the contract between the parties. But these rules do not dispense with the exercise of ordinary care on the part  *  *  *  of the bank."

This statement of the law has been frequently cited with approval and undoubtedly represents the established law of this state. It follows that, since the defendant has made such a payment of $500 of plaintiff's account as the plaintiff agreed should constitute a good and valid payment to him, the plaintiff cannot recover this amount from the bank if the bank has exercised due care in making the payment.

The paying teller of the bank is dead, and consequently the bank is not in a position to produce testimony of the exact care used by him in making the payment. Obviously, however, wrongdoing or negligence is never presumed without some evidence. The evidence which the plaintiff claims established such negligence is the difference between the forged signature on the draft of $500, and the plaintiff's signature on file with the bank. In Appleby v. Erie County Savings Bank, supra, the court said, in considering a similar claim:

"If the two signatures were so dissimilar as when compared the discrepancy would be easily and readily discovered by a person competent for the position, then the failure to discover it would be evidence of negligence which should have been passed upon by the jury. It would not be evidence of negligence if the difference was not marked and apparent, or if it would require a critical examination to detect it, and especially if the discrepancy was one as to which competent persons might honestly differ in opinion."

In this case there is no doubt but that the forged signature bears a very marked similarity to the true signature; in fact, even at the trial the defendant produced several experts who testified that in their opinion it was a genuine signature.

The plaintiff's expert conceded practically that an ordinary man would not be able to see the difference, but he thought that a bank teller was not "an ordinary man," and "the line quality is so absolutely bad as to attract your attention at once, but so far as outline is concerned it does resemble it."

The mere fact that one expert differing with other experts testifies that the "line quality," or difference in slant, "should attract your attention at once," does not in my opinion raise a real issue of negligence, where upon inspection of the signatures themselves the dissimilarity in the signatures appears of such a character that no negligence can reasonably be predicated upon it.

At the close of the case, both sides moved for the direction of a verdict, and the learned trial justice directed a verdict for the plaintiff for the full amount. For the reasons given above, I think that this

direction was erroneous, and that he should have directed a verdict only for the sum of $322.64, with interest.

Judgment should be reduced to that amount, and as modified affirmed, with costs to the appellant.