Brady, J.
This action was brought to recover the sum of $225, the balance of moneys deposited with the defendant’s bank, and remaining to her credit on the 18th of November, 1885. The defense interposed was payment and it was asserted on behalf of the defendant that on the 28th of June, 1886, a woman appeared at their bank with the plaintiffs pass-book and requested the paying teller, to whom she presented the book, to make out a draft for her to sign for the amount named. The teller made out the draft, and after it was signed, the amount of it was paid. The plaintiff upon the same day called at the bank (having having discovered that her pass-book had been taken from her possession' without her authority), and in order to prevent the use of her book to her prejudice, she advised the bank of the circumstance just mentioned, and that she had not signed draft or order.
The by-laws of the bank provide that the pass-book shall be the voucher of the depositor, and the possession of the pass-book shall be sufficient authority to the bank to warrant any payment made and entered in it; and the bank shall not be liable or called on to make any payment without the presenting of the pass-book at its counter, that the proper entry may be made in it; and further that
Although the bank will endeavor to prevent fraud on its depositors, yet all payments to persons producing the passbooks issued by the bank, shall be valid payments to discharge the bank.
It was also set upon as a defense that sometime after the occurences mentioned, the plaintiff called at the bank, claiming the balance of her deposit, $53.94, and made an affidavit in which she stated that she was the owner of $53.94 due on the pass-book, and asked the bank to pay her that sum, and that thereupon the payment was made to her ; and defendants set this up as a good accord and satisfaction.
The defense therefore rested on two propositions.
First. That the payment of the $225 was properly made to the person who presented this book and signed the contract ; and
Secondly. That even if that were not so, the demand and payment of the $53.94 was, under the circumstances, an accord and satisfaction, and discharged any obligation then existing in favor of the plaintiff.
Although the defense interposed was that the pass-book *74 was presented by a woman, nevertheless the evidence on the part of the defendant failed to establish that fact; the officers of the bank who were examined being enabled to state positively in consequence of the numerous transactions occurring on that day whether it was a man or a woman. The evidence on the part of the plaintiff was to the effect that her nephew who was boarding with her took the bank book, and it was assumed that it was he who presented it, and to whom the payment was made. Of course all this evidence was submitted to the jury, and the questions arising from the contentions of the parties, were presented to them for determination.
It was held in Israel v. Bowery Bank (9 Daly, 507), that before a savings bank can successfully resist an action by a a depositor for his deposit which it had paid out to a person who has wrongfullly obtained possession of the book, it must be shown to have exercised reaonable care and prudence in disbursing the money, and
In the case of Allen v. Williamsburgh Savings Bank (69 N. Y., 314), it was held that a by-law of a savings bank Tequiring its best efforts to avoid mispayments, calls for more than ordinary care and diligence. When a savings bank has made rules as to payments to depositors by which it and its customers are to be governed, they being in the nature of an agreement, it is not to be excused for a payment on a forged order until it has shown that it used its best efforts called for under the circumstances of the case to prevent fraud. See also Smith v. Brooklyn Savings Bank (101 N. Y., 608).
In the case of Appleby v. Erie County Savings Bank (67 N. Y , 12), in which it appeared that the defendants had a bylaw similar to that of the defendants herein, it was held that notwithstanding this by-law and the rules which related to it, the bank was not absolved from the exercise of ordinary care.
There is no doubt that the rule deducible from those cases and others which might be cited, is that notwithstanding the protective character of the by-law as to payments, the bank is not relieved from the exercise of that investigation which is necessary to carry out the undertaking expressed by the words : “Will endeavor to prevent frauds on its depositors.”
In this case there is no evidence whatever of any effort on the part of the bank to ascertain whether the person presenting the book was entitled to its custody. No question seems to have been asked, notwithstanding that the teller was requested to prepare the draft, which he did. It may be said that there were no circumstances attending the application calculated to excite the suspicion of the teller, *75 and that this relieved the bank officers from any imputation of negligence. But this does not seem to be a proper response to the accusation. The bank assumed the obligation of ordinary care, and must employ it in all cases where a demand is made. The test could not be made by an examination of the signature if the depositor is able to write, or on interrogation as to the number of the book, or as to the residence and antecedents of the person presenting the draft, which would perhaps be a sufficient compliance with the obligation they have assumed, if nothing suspicious appeared as the result of such examination.
It was said by the applicant’s counsel that if the bank were required to make investigations when payments were made, it would be impossible for it to conduct its business. It is a sufficient answer to that proposition that there is no evidence to show that such a result would follow. But if so, it was one against which the bank would, perhaps, have protected itself by making the payment absolute on the pass-book without any assumption of another duty to the depositor. As an appellate tribunals, however, we are not called upon to legislate upon the subject or to make a contract.
The payment of $53.94, which the appellants insist was an accord and satisfaction, cannot be so regarded. It was a payment of money absolutely due to the depositor, and there was no release executed so far as the record shows; although when the $53.94 was paid to the plaintiff, she signed a receipt in which it was stated that the sum paid was the total amount due. As to that, however, she testified that she was required to sign the receipt which was prepared for her at the bank; but she denies emphatically that the receipt was read to her, or that she had any intention of settling with the bank at all; she only received fifty dollars with the interest due on it, and no more; and that she considered the receipt to be such as she had signed on former occasions. The issues thus created were submitted to the jury; and they found in her favor.
It seems to be settled that one who upon the receipt of a sum of money signs, without reading, a receipt in full of all claims, is not precluded thereby from recovering any other sum due him; and it is a well-established rule that a receipt is always open to explanation.
The charge is not presented by the record and it must be assumed that that the questions of fact, springing from the evidence, to wit: Whether or not the bank exercised proper care in making the payment, and whether there was a good accord and satisfaction (assuming it to have been sufficiently set up in the manner to create an issue), were *76 properly submitted to the jury, as to both of which the findings of the jury were adverse to the defendant.
From an examination of the record, we discover no reason why the judgment should be interfered with.
It must, therefore, be affirmed, with costs.
Daniels, j., concurs.