FANNY MYEROWICH, Personally and as General Guardian of MYER MYEROWICH, an Infant, Respondent, *v.* THE EMIGRANT INDUSTRIAL SAVINGS BANK, Appellant.

First Department, November 8, 1918.

**Banks and banking — savings banks — purpose of provision for suspension of payments for sixty days — liability for payment of forged orders.**

The provision of the Banking Law (Laws of 1914, chap. 369, § 248) giving a savings bank the privilege of suspending payment for sixty days is not designed for, and has no relation to, making inquiries concerning the authority of persons making withdrawals from accounts in the bank. Its purpose is to protect banks in time of panic and financial distress.

Whether a bank uses ordinary care and diligence in making payments from a depositor's account is a question of law when the facts are conclusive and undisputed, and a question of fact when they are debatable and conflicting.

A savings bank which makes payments out of the trust account of an illiterate guardian whose signature is made by a cross mark, to a person presenting the passbook with an order which has the approval of the guardian's surety stamped thereon, and which has attached thereto a certificate of a commissioner of deeds, regular on its face, certifying that the cross mark signature was made and acknowledged by the guardian, is not liable to the guardian where it appears that the payments were in fact made to an impostor.

But where the bank, knowing that the surety company has possession of the passbook, and that withdrawals are made upon the authorization or approval of the surety company, makes a payment on an order such as mentioned above, except that it does not bear the approval of the surety company, it is guilty of negligence, and liable to the depositor where it appears that the person presenting the order was an impostor.

That the employees of the bank who cashed such orders were unfamiliar with the course of dealing requiring the approval of the surety company does not excuse the bank, as ordinary prudence required that a notation should have been made on the signature card when the account was opened, showing that the approval of the surety was necessary.

In such a case the bank was not entitled, as a matter of law, to rely upon the certificate of the commissioner of deeds.

APPEAL by the defendant, The Emigrant Industrial Savings Bank, from a determination and order of the Appellate Term of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 4th day of April, 1918, affirming a judgment of the Municipal Court

of the City of New York, Borough of Manhattan, First District, with notice of an intention to bring up for review the original judgment of the Municipal Court.

*Henry B. Hammond* of counsel [*R. & E. J. O'Gorman,* attorneys], for the appellant.

*Samuel Saltzman,* for the respondent.

SHEARN, J.:

This appeal presents the question of the liability of a savings bank to a depositor for payments out of the account to an imposter who had wrongfully obtained the passbook and forged drafts upon the account.

In 1904 the plaintiff opened four accounts in the defendant bank as general guardian of each of her four children and deposited $833 in each account. The Illinois Surety Company was the surety upon the guardian's bond, which fact was known by the defendant. For its own protection the surety company required the plaintiff to leave the four passbooks in its custody. The plaintiff was an illiterate woman, unable to sign her name, and consequently all that the bank had upon its signature card was her cross mark and certain information that would serve to identify the plaintiff. This appeal concerns only the account of the plaintiff as guardian for her son Myer, No. 473218. From 1904 to 1915 there were practically no withdrawals from this account except the interest, which was drawn as it accrued. Whenever the plaintiff made a withdrawal the surety company had a clerk accompany her to the bank with the passbook. Plaintiff signed the interest draft by making a cross mark and the execution of the instrument was attested by the certificate of a notary or commissioner of deeds. These drafts for interest were either stamped " approved " by the surety company or a letter approving the withdrawal signed by the surety company was delivered to the defendant bank. Thus the bank had ample notice, not only from the fact that this was a guardian's trust account but also from long-continued course of dealing, that withdrawals from this account required some authorization from the surety company. For some reason not disclosed the bank failed to make any notation upon the signature card

showing that withdrawals required the approval of the surety company. On August 26, 1915, an order for $150 on this account was presented to the bank by a person other than the plaintiff. There was a cross mark signature on the order purporting to be acknowledged before a commissioner of deeds. There was stamped on the order the approval of the surety company and the order was indorsed with the name of one W. S. Winans. This order was paid to the person who presented it, who also exhibited to the bank the passbook. On October 27, 1915, another order for the same amount was paid to a person other than the plaintiff under similar circumstances. On January 5, 1916, a third order, accompanied by the passbook, was presented to the bank to pay to bearer $115.85 by some person other than the plaintiff. Attached to the order was a certificate purporting to be that of a commissioner of deeds, certifying that the cross mark was made and acknowledged by the plaintiff. Although this third order bore no stamp of approval by the surety company and was not indorsed, the bank paid same without any inquiry. The account was finally closed on July 5, 1916, by a payment to a person other than the plaintiff of $395.50 upon the presentation of an order purporting to be signed by the plaintiff by her cross mark and purporting to be acknowledged before a commissioner of deeds and bearing the indorsement of said Winans. The order did not call for any specific sum but for the "balance of account." Although the passbook was presented as usual, there was no approval of the surety company stamped upon the order and no letter from the surety company authorizing the withdrawal. This was also paid by the bank without inquiry.

The question involved is whether the defendant bank was negligent in making these payments. The learned Appellate Term has considered all four payments in the same category, giving no weight to the essential difference in the facts, whereas each withdrawal should be considered in the light of its own peculiar facts. The ground assigned by the Appellate Term for holding the defendant liable was that in view of the circumstances "reasonable care in the protection of the depositor required the defendant savings bank to avail itself of the sixty days' clause to make proper inquiry as to whether

such withdrawal was made by authority of the plaintiff."
The provisions of the Banking Law (Consol. Laws, chap. 2
[Laws of 1914, chap. 369], § 248, as amd. by Laws of 1916,
chap. 164) giving the bank the privilege of suspending pay-
ments for sixty days was not designed for and has no relation
to making inquiries concerning the authority of persons mak-
ing withdrawals from accounts in the bank. That was
enacted for the protection of banks in times of panic and
financial stress. It would be a great hardship upon depositors
if a savings bank could arbitrarily take sixty days to investi-
gate the genuineness of the depositor's signature.

Whether the bank used ordinary care and diligence is a
question of law when the facts are conclusive and undisputed,
and is a question of fact when they are debatable and con-
flicting. (*Allen* v. *Williamsburgh Savings Bank*, 69 N. Y.
314, 322.) Upon the undisputed facts surrounding the
first two withdrawals, made by a person presenting the pass-
book and having the approval of the surety company stamped
upon the order, and there being attached to the order a
certificate of a commissioner of deeds, regular upon its face,
certifying that the cross mark signature was made and
acknowledged by the plaintiff, there is no basis for a finding of
negligence on the part of the bank. " It would be utterly
impracticable to do business if each application for a with-
drawal of money had to be delayed until a searching inquiry
could be made as to the regularity of the transaction."
(*Kelley* v. *Buffalo Savings Bank*, 180 N. Y. 171, 178.)

As to the two subsequent withdrawals, the situation is
quite different. Knowing, as the bank did, that this was
a guardian's trust account, that the guardian was under bond,
that the surety company had possession of the passbook, and
that the course of dealing was that withdrawals were made
upon the authorization or approval of the surety company,
ordinary care required some inquiry where the usual circum-
stances were departed from and the commission of a fraud
was so easy. The mere fact that the employees of the bank
who cashed the last two orders were not the ones who had
cashed the preceding ones, and who, therefore, were unfamiliar
with the course of dealing requiring the approval of the
surety company, does not excuse the defendant. Had the

officials of the bank made a notation on the signature card when the account was opened, showing that withdrawals required the approval of the surety company, a precaution that ordinary prudence dictated, it would have been at once apparent to any paying teller of the bank that these unauthenticated orders were on their face irregular. No elaborate investigation was necessary in order to discharge the duty of ordinary care. A mere inquiry of the surety company by telephone would have disclosed the fact that the passbook had been purloined and that the withdrawals were unauthorized.

The bank contends that it was entitled as a matter of law to rely on the certificate of the commissioner of deeds. This certificate was some evidence that the draft was actually signed by the depositor, but of course it was not conclusive. In ordinary cases it would be very persuasive proof of the exercise of ordinary care, when it appeared that the bank paid in reliance upon a sealed certificate of a commissioner of deeds or notary public, but not so in a case such as this where the account was not only a trust account but was bonded and the course of dealing was to require the approval of the surety. The circumstances attending the payment of the final order were especially calculated to awaken suspicion, for the order not only was peculiar in that it called for a " balance of account," but at the same time the same person presented similar orders drawing out the balance of each of the three other trust accounts. Any experienced paying teller of a bank should have known that the closing out of these four guardian's accounts at the same time, in favor of an unidentified person other than the guardian and without any authorization from the surety company, required some inquiry. The mere fact that on April 29, 1916, the plaintiff as guardian of another son withdrew seventy-five dollars from that account upon an order not bearing the stamped approval of the surety company is not sufficient to rebut the inference of negligence clearly to be drawn from the course of dealing with the account involved in this action.

It follows that the determination appealed from be modified by directing that the judgment be modified by reducing the amount recovered by the sum of $300, representing the first

two drafts, and as modified affirmed, with costs on this appeal to the appellant.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Determination modified as directed in opinion and as modified affirmed, with costs to the appellant. Order to be settled on notice.